IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, et al.,

   *Plaintiffs*,

v.	Case No. 8:24-cv-879

KATHLEEN PASSIDOMO, et al.,

   *Defendants*.

_____/

## SECRETARY'S MOTION TO DISMISS

Defendant, Secretary of State Cord Byrd, moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Specifically, as explained in the attached memorandum, Plaintiffs have not and cannot state a Fourteenth Amendment claim for vote-dilution.

# INTRODUCTION

On February 3, 2022, the Florida Senate passed Senate Joint Resolution 100. *See* Fla. Sen. Bill Summary for Joint Resolution of Apportionment (available at https://www.flsenate.gov/Session/Bill/2022/100). It concerned the apportionment of the Florida House of Representatives and the Florida Senate. *Id.* Thirty-seven senators voted for the bill. *Id.* None voted against it. *Id.*

The Florida Supreme Court reviewed the apportionment plan as required by Article III, § 16(c) of the Florida Constitution. *In re Senate Joint Resolution of Legislative Apportionment 100*, 334 So. 3d 1282 (Fla. 2022). "But, for the first time since the voters adopted the existing procedural framework for judicial review of apportionment in 1968, no one appeared to oppose the Legislature's plans." *Id.* at 1285. The Florida Supreme Court nevertheless assessed the apportionment plan's compliance with state and federal law. *Id.* at 1285-90. It found the districts within the plan to be compact, *id.* at 1287; to follow political and geographical boundaries wherever possible, *id.* at 1288; and to "*not* impermissibly dilute minority voting strength," *id.* at 1289 (emphasis added). None dissented from the decision.

More than two years later, Plaintiffs bring a vote-dilution claim under the Fourteenth Amendment's Equal Protection Clause. Doc. 1 at ¶¶ 133-39. They claim that the "packing" of black voters in Senate District 16 dilutes black voting strength in Senate District 18. *Id.* at 1. The problem is this: Plaintiffs fail to state a claim because they can't allege a discriminatory *effect* for purposes of the Fourteenth Amendment.

1

*See Common Cause Fla. v. Byrd*, No. 4:22-cv-109-AW-MAF, 2024 U.S. Dist. LEXIS 54503, at *152-53 (N.D. Fla. Mar. 27, 2024) (three-judge court) (Winsor, J., concurring in part and concurring in the judgment).

The test for discriminatory effect in a vote-dilution claim under the Fourteenth Amendment is the same as that for a claim under § 2 of the Voting Rights Act. *Id.* It "requires a showing, among other things, that the minority group 'is sufficiently large and geographically compact to constitute a majority in a single-member district.'" *Id.* at *153 (quoting *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986)). But the complaint makes clear that there is no configuration of the senate districts where the black population constitutes a majority of the population in a district. Doc. 1 at ¶ 126. Not one. Not in the benchmark plan. *Id.* Not in the enacted plan. *Id.* Not in Plaintiffs' demonstration plan. *Id.* And not in the two other plans that Plaintiffs cite as alternatives. *Id.* Without a majority-minority district, Plaintiffs fail to state a vote-dilution claim under the Fourteenth Amendment. This Court should thus dismiss the complaint.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege facts sufficient to establish the Court's subject-matter jurisdiction. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (en banc); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The complaint must also "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual

content" that will support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Vote-dilution claims under the Fourteenth Amendment require Plaintiffs to plead and then prove both discriminatory purpose and discriminatory effect. *See, e.g.*, *Shaw v. Reno*, 509 U.S. 630, 641 (1993); *Johnson v. DeSoto Cnty. Bd. of Comm'rs*, 204 F.3d 1335, 1345 (11th Cir. 2000). Since the 1982 amendments to the Voting Rights Act, however, vote-dilution claims "[t]ypically" arise under § 2 of the Act. *Common Cause*, 2024 U.S. Dist. LEXIS 54503, *151. That's because the § 2 claims no longer require a showing of discriminatory purpose; discriminatory effect is all that's needed. *Id.* (citing *Gingles*, 478 U.S. at 35); *see also id.* at *76-77; Travis Crum, *Reconstructing Racially Polarized Voting*, 70 Duke L. J. 261, 282 (2020). Yet the discriminatory-effect requirement under the Fourteenth Amendment is the same as that for a § 2 claim. It shares a common lineage. And it too requires Plaintiffs to show that the black community in a geographically compact area could constitute a majority of the voting-age population—a "threshold" showing to establish that a state's actions are thwarting the minority's "*potential* to elect representatives in the absence of the challenged" action. *Gingles*, 478 U.S. at 50, n.17. Plaintiffs' complaint makes clear that they can't meet this threshold requirement. Doc. 1 at ¶ 126.

3

### I. Discriminatory effect under the Voting Rights Act and the Fourteenth Amendment: a shared lineage.

The Supreme Court recognized in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2331 (2021), that "[o]ne Fourteenth Amendment vote-dilution case, *White v. Regester*, 412 U.S. 755 (1973)," has come "to have outsized importance in the development" of Voting Rights Act "case law." It was in *White* that the Supreme Court said a vote-dilution plaintiff must show that "the political processes leading to nomination and election were not *equally open* to participation by the group in question—that its members had *less opportunity* than did other residents in the district to participate in the political processes and to elect legislators of their choice." 412 U.S. at 766 (emphasis added). Section 2 of the Voting Rights Act borrows "almost verbatim from *White*[*'s*]" Fourteenth Amendment test for vote dilution. *Brnovich*, 141 S. Ct. at 2333. Section 2 requires proof that "the political processes leading to nomination or election . . . are not *equally open* to participation" by members of a minority community "in that its members have *less opportunity* than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b) (emphasis added).

So, when does the government dilute a minority group's ability to elect legislators or representatives of its choice? The Supreme Court answered that question in *Gingles*, recognizing three "necessary preconditions" for any vote-dilution claim. 478 U.S. at 50-51. The first of these preconditions calls for the minority group to be "sufficiently large and geographically compact to constitute a majority in a single-

4

member district." *Id.* at 50. The second requires a showing that the minority group is "politically cohesive." *Id.* at 51. And the third calls on a plaintiff to establish that the majority group votes "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Id.* Only after the preconditions are met can a court assess whether there's been impermissible vote dilution based on the "totality of the circumstances." *Id.* at 79; *see also Johnson v. De Grandy*, 512 U.S. 997, 1013 (1994).

The *Gingles* preconditions serve an essential gatekeeping purpose. Together they "establish that the minority has the *potential* to elect a representative of its own choice in some single-member district," without which "there neither has been a wrong nor can be a remedy." *Growe v. Emison*, 507 U.S. 25, 40-41 (1993) (emphasis added). The first precondition's majority-minority requirement, in particular, shows that a minority group can't elect a representative of its "own choice," rather than "the choice [of] a [racial] coalition." *Bartlett v. Strickland*, 556 U.S. 1, 15 (2009) (plurality op.).

True, *Gingles* concerned a § 2 claim. But because the language *Gingles* interpreted came from *White*, a Fourteenth Amendment case, it follows that plaintiffs pursuing a vote-dilution claim under the Fourteenth Amendment must also satisfy the *Gingles* preconditions. That's especially so when "Congress explained that its purpose in adding [the text that *Gingles* interpreted] was to 'embody the test laid down by the Supreme Court in *White*.'" *Chisom v. Roemer*, 501 U.S. 380, 395 n.22 (1991) (quoting S. Rep. No. 97-417, at 27). After all, Congress "revised § 2 to make clear that a violation could be proved by showing discriminatory effect alone *and* to establish as

5

the relevant legal standard the 'results test,' applied by [the Supreme] Court in *White v. Regester*." *Gingles*, 478 U.S. at 35 (emphasis added). Congress didn't amend § 2 to create a new effects test. The one, enduring effects test requires every plaintiff to satisfy three preconditions. *See Gingles*, 478 U.S. at 50-51.[1]

## II. The majority-minority requirement for vote-dilution claims: a threshold Plaintiffs can't and haven't met.

Plaintiffs in this case can't meet the first *Gingles* precondition, namely the majority-minority requirement. They challenge "two Florida Senate districts in the Tampa Bay area—Districts 16 and 18—as racially gerrymandered in violation of the Fourteenth Amendment." Doc.1 at 1. They allege that "District 16 stretches across the waters of" "Tampa and St. Petersburg, *packing* more than half of the region's Black residents into that district." *Id.* (emphasis added). And they claim that "adjacent District 18 is artificially stripped of Black residents"—that the "influence and voice" of voters there is diluted. *Id.*; *see also id.* at ¶¶ 12, 99, 133-39.

Yet nowhere in their complaint do Plaintiffs ever allege that the creation of a majority-black district is even possible as an alternative to Senate District 18 (or Senate

---

[1] The Eleventh Circuit recognized much the same. In *Johnson*, the Eleventh Circuit said that "the Supreme Court, historically, has articulated the same general standard, governing the proof of injury, in both section 2 and constitutional vote dilution cases." 204 F.3d at 1344. Or to put it more bluntly: "[the Eleventh Circuit] question[ed], as a legal proposition, whether vote dilution can be established under the Constitution when the pertinent record has not proved vote dilution under the more permissive section 2." *Id.* at 1344-45; *see also Lee Cnty. Branch of NAACP v. City of Opelika*, 748 F.2d 1473, 1478 n.7 (11th Cir. 1984) ("[I]f the plaintiffs cannot prevail under the generally more easily proved 'results' standard of section 2, it is unlikely that they could prevail on their constitutional claims in any event.").

6

District 16 for that matter). The black voting age population tops out at 33.20% in the five iterations of what Plaintiffs call a "Protected District"—a district in the region that performs for black voters. Doc. 1 at ¶ 126. That's simply not enough.

To establish a vote-dilution claim, Plaintiffs had to show that the minority group has "50 percent or more of the voting population and could constitute a compact voting majority" but has nonetheless "not [been] put into a district." *Bartlett*, 556 U.S. at 19. Plaintiffs can't state a claim for relief without at least alleging this threshold fact. *Id.*; *see also White*, 412 U.S. at 766; *Thompson v. Kemp*, 309 F. Supp. 3d 1360, 1362, 1365-66 (N.D. Ga. 2018) (three-judge court) (dismissing Fourteenth Amendment vote-dilution claim for failure to allege facts supporting *Gingles* preconditions).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint under Rule 12(b)(6). Plaintiffs haven't adequately plead a discriminatory effect for purposes of their Fourteenth Amendment claim.

Dated: April 25, 2024

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

Respectfully submitted,

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

*Counsel for the Secretary*

## LOCAL RULE 3.01(A) CERTIFICATION

The undersigned certifies that this motion to dismiss does not exceed twenty-five pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned certifies that counsel for the Secretary conferred with counsel for Plaintiffs regarding this motion to dismiss, that the parties do not agree on the resolution of the motion, that the motion is opposed, and that the conference occurred via telephone.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2024, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.