IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, *et al.*,

   *Plaintiffs*,

v.

KATHLEEN PASSIDOMO, in her official capacity as President of the Florida Senate, *et al.*,

   *Defendants*.

_____/

Case No. 8:23-cv-879-CEH-TPB-ALB

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

In their Motion to Dismiss (ECF No. 19, "Motion"), Defendants argue that "Plaintiffs have not and cannot state a Fourteenth Amendment claim for vote-dilution." Motion at 1. But Plaintiffs' sole claim is that Senate Districts 16 and 18 (the "Challenged Districts") violate the Fourteenth Amendment because they are *racial gerrymanders*—that is, they were drawn predominantly based on race, and are therefore racial classifications subject to strict scrutiny. Compl., ECF No. 1, ¶¶ 133–139. Plaintiffs are not presenting a vote dilution claim, only a racial gerrymandering claim.

Since Plaintiffs' Complaint states a racial gerrymandering claim, and Defendants do not argue to the contrary, the Court should deny the Motion.

### **STATEMENT OF THE CASE**

Plaintiffs filed a complaint for injunctive and declaratory relief against the Florida Secretary of State and President of the Florida Senate, alleging racial gerrymandering in violation of the Fourteenth Amendment. Compl., ECF No. 1. The

1

Secretary of State moved to dismiss, misconstruing Plaintiffs' claim as a claim for vote dilution and arguing that Plaintiffs failed to state a claim for vote dilution. Motion, ECF No. 19. The Senate President joined the motion. ECF No. 24.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In evaluating a motion to dismiss, a trial court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## ARGUMENT

The seminal racial gerrymandering case is *Shaw v. Reno*, 509 U.S. 630 (1993). In *Shaw*, the Supreme Court held that voters stated an Equal Protection Clause claim for racial gerrymandering when they alleged that the redistricting process "rationally can be viewed only as an effort to segregate the races for purposes of voting, without regard to traditional districting principles and without sufficiently compelling justification." *Id.* at 642. The constitutionally cognizable harm in a racial gerrymandering case is the racial classification itself: "[c]lassifications of citizens solely on the basis of race 'are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.'" *Id.* at 643 (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)); *see also GRACE, Inc. v. City of Miami*, __ F. Supp. 3d

\_\_\_, No. 1:22-cv-24066-KMM, 2024 WL 1563066, at *3 (S.D. Fla. Apr. 10, 2024) ("In a racial gerrymandering case, an injury in fact exists when an individual is classified based on their race." (citing *Ala. Legis. Black Caucus v. Alabama* (*ALBC*), 575 U.S. 254, 263 (2015))). The Supreme Court explained:

> A reapportionment plan that includes in one district individuals who belong to the same race, but who are otherwise widely separated by geographical and political boundaries, and who may have little in common with one another but the color of their skin, bears an uncomfortable resemblance to political apartheid. It reinforces the perception that members of the same racial group—regardless of their age, education, economic status, or the community in which they live—think alike, share the same political interests, and will prefer the same candidates at the polls.

*Shaw*, 509 U.S. at 647.

To state a Fourteenth Amendment racial gerrymandering claim, a plaintiff must allege that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). "[I]f racial considerations predominated over others, the design of the district must withstand strict scrutiny" and "[t]he burden thus shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Id.* at 292 (citing *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 192 (2017)); *see also Shaw*, 509 U.S. at 649 ("[A] plaintiff . . . may state a claim by alleging that the legislation . . . rationally cannot be understood as anything other than an effort to separate voters into different districts on the basis of race, and that the separation lacks sufficient justification.").

3

That is exactly what Plaintiffs allege in their Complaint. Plaintiffs allege that the Legislature drew the Challenged Districts with race as the predominant factor for each, recounting both "circumstantial evidence of [the] district[s'] shape and demographics [and] more direct evidence going to legislative purpose." *Miller*, 515 U.S. at 916; Compl. ¶¶ 6–7, 63–69, 73–76, 78–80, 93–102. The Complaint further alleges that "the [L]egislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." *Miller*, 515 U.S. at 916; Compl. ¶¶ 63, 65, 88–90, 95–102. Lastly, Plaintiffs allege that the Legislature's use of race was not narrowly tailored. Compl. ¶¶ 103–132. These allegations "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Defendants confuse Plaintiffs' sole *Shaw* racial gerrymandering claim with a vote dilution claim, which is an entirely different Fourteenth Amendment theory. The seven-page motion contains ten citations to *Common Cause Florida v. Byrd*, but that case is wholly inapposite: the court there explicitly noted "[b]oth sides disavow that this is a constitutional racial gerrymandering case under *Shaw v. Reno*." No. 4:22-cv-109-AW-MAF, 2024 WL 1308119, at *2 (N.D. Fla. Mar. 27, 2024). Defendants argue that the pleading requirements for Plaintiffs' claim "under the Fourteenth Amendment is the same as that for a [Voting Rights Act] § 2 claim." Motion at 3. But that would only be true for a Fourteenth Amendment *vote dilution* claim, not a racial gerrymandering

4

claim like this one.[1] As in this Court's recent *Jacksonville NAACP* decision, Defendants here "focus[] on issues that would be relevant to a VRA claim but have no bearing on the equal protection claim presented in this case." *Jacksonville Branch of NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229, 1281 (M.D. Fla. 2022), *stay denied*, 2022 WL 16754389 (11th Cir. Nov. 7, 2022), *and appeal dismissed*, 2023 WL 2966338 (11th Cir. Jan. 12, 2023).

The Court must be careful not to conflate a Fourteenth Amendment racial gerrymandering claim with a vote dilution claim; they are two distinct claims with different elements and, therefore, different pleading requirements. "[L]egally, a Fourteenth Amendment claim involves whether race was the predominate factor in drawing district lines, not whether vote dilution occurred." *GRACE, Inc. v. City of Miami*, 674 F. Supp. 3d 1141, 1157 (S.D. Fla. 2023) (citing *Cooper*, 581 U.S. at 291), *appeal dismissed*, 2023 WL 5624206 (11th Cir. July 13, 2023). Here, "Plaintiffs' burden . . . under the Fourteenth Amendment does not require a showing of vote dilution, as Defendant seems to repeatedly suggest. Rather, Plaintiffs' harm arises by virtue of the racial sorting itself and the subsequent participation in an election where voting

---

[1] Defendants argue that the requirements for vote dilution claims brought under the VRA and Fourteenth Amendment are identical. Motion at 5–6. While irrelevant to the racial gerrymandering claim in this case, that issue is less settled than Defendants suggest, and Plaintiffs do not concede the point. *See Common Cause Fla.*, 2024 WL 1308119, at *27 ("[T]here is a dearth of Supreme Court authority on what is required to prove dilutive effect with respect to congressional districts under the Fourteenth or Fifteenth Amendments."); *Cano v. Davis*, 211 F. Supp. 2d 1208, 1248–49 (C.D. Cal. 2002) ("[T]he effects standard for an intentional vote dilution claim is uncertain, largely because of a dearth of precedent. The cases provide little direct authority as to the requisite degree of dilutive effect for an intentional discrimination claim under either the constitution or the statute. . . . [I]t may be appropriate to relax the first or even second of the *Gingles* pre-conditions."), *aff'd*, 537 U.S. 1100 (2003). Regardless, the Court need not resolve that legal question to rule on the motion to dismiss.

5

occurred under an unconstitutional map." *Id.* at 1161 (citing *Miller*, 515 U.S. at 911–12; *ALBC*, 575 U.S. at 263).

Equally, Plaintiffs need not "allege that the creation of a majority-[B]lack district is even possible" as Defendants suggests. Motion at 6. "While such a contention would be relevant to a VRA claim, Plaintiffs' equal protection claim does not require such a showing." *Jacksonville NAACP*, 635 F. Supp. 3d at 1282 n.55 (rejecting government's argument that "racial packing has not occurred" because plaintiffs could not show they could draw an additional majority-minority district).

## CONCLUSION

The only question Defendants' motion raises is whether Plaintiffs have plausibly stated a Fourteenth Amendment racial gerrymandering claim under *Shaw* and its progeny. For the reasons set forth above, Plaintiffs' Complaint states such a claim, and Defendants make no argument that it does not. Instead, Defendants argue only that Plaintiffs have not stated a vote dilution claim, which Plaintiffs do not purport to assert in the first place. The Court should deny the motion.

Respectfully submitted May 6, 2024,

 /s/ Nicholas L.V. Warren

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

Deborah N. Archer*
David Chen*
**Civil Rights & Racial Justice Clinic**
**Washington Square Legal Services, Inc.**
245 Sullivan Street
New York, NY 10012
(212) 998-6473

6

| | |
|---|---|
| Daniel B. Tilley (FBN 102882)<br>Caroline A. McNamara (FBN 1038312)<br>**ACLU Foundation of Florida**<br>4343 West Flagler Street, Suite 400<br>Miami, FL 33134<br>(786) 363-2714<br>dtilley@aclufl.org<br>cmcnamara@aclufl.org | deborah.archer@nyu.edu<br>davidchen@nyu.edu<br><br>James Michael Shaw, Jr. (FBN 677851)<br>Naomi Robertson (FBN 1032076)<br>**Butler Weihmuller Katz Craig LLP**<br>400 North Ashley Drive, Suite 2300<br>Tampa, FL 33602<br>(813) 281-1900<br>jshaw@butler.legal<br>nrobertson@butler.legal |
| \* *Special Admission* | |

*Counsel for Plaintiffs*