UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KETO NORD HODGES, MEIKO SEYMOUR, JARVIS EL-AMIN, JENNIFER GARCIA, and JACQUELINE AZIS,

    Plaintiffs,

v.

KATHLEEN PASSIDOMO and CORD BYRD,

    Defendants.

Case No: 8:24-cv-879-CEH-UAM

THREE-JUDGE COURT

## ORDER

This matter comes before the Court on Defendant Cory Byrd's Motion to Dismiss for Failure to State a Claim (Doc. 19), which Defendant Kathleen Passidomo joins (Doc. 24), and Plaintiffs' response in opposition to the motion to dismiss (Doc. 28).

Plaintiffs complain that two Florida Senate districts are racially gerrymandered. (Doc. 1). Defendants move to dismiss the Complaint, arguing that Plaintiffs have failed to state a plausible vote-dilution claim. (Doc. 19). But Plaintiffs don't bring a vote-dilution claim; they bring a racial-gerrymandering claim. As explained below, because Defendants don't suggest that Plaintiffs fail to state a plausible racial-

gerrymandering claim under the Fourteenth Amendment, the Court **DENIES** Defendants' Motion to Dismiss.

## DISCUSSION

This action concerns the constitutionality of Florida's configuration of two Senate districts. Defendants argue that Plaintiffs failed to state a vote-dilution claim, by not explaining what discriminatory effect the configuration of these districts cause. Defendants are confused. Plaintiffs bring a racial-gerrymandering claim under the Fourteenth Amendment. That sort of claim carries no requirement that a discriminatory effect be alleged. And Defendants don't argue that Plaintiffs otherwise fail to state a racial-gerrymandering claim under the Fourteenth Amendment. So Defendants' Motion to Dismiss fails.

### I.     Background

At the motion-to-dismiss stage, a court must accept as true all the allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The story of this dispute, as explained by the Complaint, is as follows.

Roughly two years ago, Florida redrew its Senate districts. Plaintiffs—voters in Senate Districts 16 and 18—challenge those districts, arguing that they are racially gerrymandered. (Doc. 1 at 2). Plaintiffs allege that they bear standard indicia of racial gerrymandering, like having districts traverse large bodies of water, splitting political communities, and forming noncompact shapes. (*Id.* at 4). Plaintiffs allege that legislators and staffers drew these districts with race in mind by packing black voters into District 16 from other places, including District 18, to ensure black voters could

2

choose a representative in District 16 (even at the expense of the remaining black voters in District 18). (*See id.* at 4–5, 10–19).

So Plaintiffs sued Defendants—the President of Florida's Senate (which, along with the House of Representatives, redraws legislative districts) and Florida's Secretary of State (who supervises and administers elections). (*Id.* at 7). Plaintiffs seek a declaratory judgment finding the two districts racially gerrymandered in violation of the Fourteenth Amendment, a permanent injunction preventing Defendants from using those districts, and other relief.

Defendants move to dismiss Plaintiffs' Complaint, arguing that they have failed to state a plausible vote-dilution claim. (Doc. 19). Plaintiffs responded in opposition, arguing that they bring a racial-gerrymandering claim, not a vote-dilution claim. (Doc. 28).

The matter is now ripe for review.

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   Law and Analysis

"The Equal Protection Clause forbids 'racial gerrymandering,' that is, intentionally assigning citizens to a district on the basis of race without sufficient justification." *Abbott v. Perez*, 585 U.S. 579, 585–86 (2018) (citing *Shaw v. Reno*, 509 U.S. 630, 41 (1993)). To plausibly state a racial-gerrymandering claim, a plaintiff must

allege facts that make plausible that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Cooper v. Harris*, 581 U.S. 285, 291 (2017).

Defendants don't argue that Plaintiffs fail to allege a racial purpose behind the challenged districting decisions. Instead, they say that Plaintiffs' claim otherwise fails, based on four premises: First, Plaintiffs bring a vote-dilution claim under the Fourteenth Amendment. Second, to survive the motion-to-dismiss stage, vote-dilution claims under Section Two of the Voting Rights Act require an allegation of discriminatory effect from districting decisions, per a test laid out in *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986). Third, vote-dilution claims under the Fourteenth Amendment so resemble their Section Two cousins that they carry the same requirement. Fourth, Plaintiffs' allegations fail to satisfy *Gingles*. So, Defendants conclude, Plaintiffs fail to state a claim. (Doc. 19 at 1–2).

The Court need not address any of the other premises because Defendants' argument fatally stumbles at the first. It is obvious from the face of the Complaint that Plaintiffs bring a racial-gerrymandering claim, not a vote-dilution claim. The very first sentence explains that Plaintiffs challenge "two Florida Senate districts in the Tampa Bay area—Districts 16 and 18—as *racially gerrymandered* in violation of the Fourteenth Amendment." (Doc. 1 at 1) (emphasis added). Just a few pages later, Plaintiffs cite *Shaw v. Reno*, 509 U.S. 630 (1993)—the landmark racial-gerrymandering case. (*Id.* at 5). The only count in the complaint is labeled "Racial Gerrymandering." (*Id.* at 29). And that count alleges the elements of a racial gerrymandering claim—that "[r]ace

4

predominated over all other redistricting criteria" and "was not narrowly tailored to advance any compelling state interests." (*Id*. at 30).

That Plaintiffs pursue a racial-gerrymandering claim rather than a vote-dilution claim is critical. A Fourteenth Amendment racial-gerrymandering claim is "analytically distinct from a vote dilution claim." *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (cleaned up). "[A] vote dilution claim alleges that the State has enacted a particular voting scheme as a purposeful device to minimize or cancel out the voting potential of racial or ethnic minorities." *Id* (cleaned up). But "the essence of the equal protection claim . . . is that the State has used race as a basis for separating voters into districts." *Id.* That is, the alleged harm in a vote-dilution claim is the electoral disadvantage resulting from a particular district configuration. But the alleged harm in a racial-gerrymandering claim is the racial classification itself.

Because Plaintiffs bring a racial-gerrymandering claim, not a vote-dilution claim, Defendants' argument that Plaintiffs fail to state a vote-dilution claim is irrelevant. There is no other suggestion that Plaintiff failed to state a racial-gerrymandering claim. So the Court **DENIES** Defendants' Motion to Dismiss.

## CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendant Cory Byrd's Motion to Dismiss for Failure to State a Claim (Doc. 19) is **DENIED**.

**DONE** and **ORDERED** this 14th day of May, 2024.

_____
ANDREW L. BRASHER

_____
THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE

_____
Charlene Edwards Honeywell
United States District Judge