## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KÉTO NORD HODGES, et al.,

    *Plaintiffs*,

v.                            Case No:  8:24-cv-879

KATHLEEN PASSIDOMO, et al.,

    *Defendants*.

_____/

## PRESIDENT PASSIDOMO'S ANSWER AND
## AFFIRMATIVE DEFENSES

Senate President Kathleen Passidomo, in her official capacity, provides the following answer and affirmative defenses to the Complaint (Doc. 1). Unless expressly admitted below, every allegation in the Complaint is denied.  When President Passidomo says something "speaks for itself," she does not admit that the referenced material exists, is accurate, or is placed in the proper context.

The introductory paragraph contains legal arguments and conclusions to which no response is required.

### INTRODUCTION

1.    Admitted.

1

2.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs are "five individual residents of Tampa and St. Petersburg," and therefore denies this allegation.  The remainder of this paragraph is also denied.

3.     Admitted that Figure 1 appears to depict a portion of the Enacted Plan. Denied that Figure 1 depicts district assignments for all census blocks in the region shown.

4.     The cited case speaks for itself.   This paragraph otherwise contains legal arguments and conclusions to which no response is required.

5.     The first two sentences of this paragraph contain legal arguments and conclusions to which no response is required. The third sentence is denied.

6.     Denied.

7.     The allegation that "Legislators and their staff purportedly drew these districts in a race-predominant manner" is denied. Admitted that District 16 complies with article III, section 21(a) of the Florida Constitution. The remainder of this paragraph is denied.

8.     This paragraph contains legal arguments and conclusions to which no response is required.

2

9.     The first sentence of this paragraph contains legal arguments and conclusions to which no response is required. The remainder of this paragraph is denied.

10.     The cited case speaks for itself.  This paragraph is otherwise denied.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Denied.

**PARTIES**

15.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

16.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

17.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

18.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

19.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

20.     Denied.

21.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

22.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

23.     President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Plaintiffs' residences and therefore denies those allegations.  The remainder of this paragraph is also denied.

24.     Denied.

25.     Admitted.

26.     Admitted.

## JURISDICTION AND VENUE

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

## FACTS

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Admitted that article III, section 21, of the Florida Constitution sets forth two tiers of requirements for legislative redistricting.

35.     Admitted that the standards for establishing legislative district boundaries contained in article III, subsection 21(a), of the Florida Constitution take precedence over the standards in article III, subsection 21(b), of the Florida Constitution where compliance with the standards in subsection 21(b) conflicts with the standards in subsection 21(a).

36.     The cited constitutional provision speaks for itself.   This paragraph otherwise contains legal arguments and conclusions to which no response is required.

37.     The cited legal authorities speak for themselves.  This paragraph otherwise contains legal arguments and conclusions to which no response is required.

38.     The cited legal authorities speak for themselves.  This paragraph otherwise contains legal arguments and conclusions to which no response is required.

39.     The cited constitutional provision speaks for itself.   This paragraph otherwise contains legal arguments and conclusions to which no response is required.

40.     The cited legal authorities speak for themselves.  This paragraph otherwise contains legal arguments and conclusions to which no response is required.

41.     The cited constitutional provision speaks for itself.   This paragraph otherwise contains legal arguments and conclusions to which no response is required.

42.     This paragraph contains legal arguments and conclusions to which no response is required.

43.     This paragraph contains legal arguments and conclusions to which no response is required.

## I.    2020 Redistricting Cycle Overview

### A. Redistricting Process Begins

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     The accuracy of the quote from Mr. Ferrin's presentation is admitted.

50.     The accuracy of the quote from Mr. Ferrin's presentation is admitted.

51.     The accuracy of the quote from Mr. Ferrin's presentation is admitted.

52.     The accuracy of the quote from Mr. Ferrin's presentation is admitted.

53.    The accuracy of the quote from Mr. Ferrin's presentation is admitted.

54.    Admitted that the Florida Senate relied on definitions of applicable constitutional provisions set out in relevant decisional precedent. President Passidomo is without knowledge as to what definitions "undergirded" the redistricting process of the Florida House of Representatives and, to that extent, denies the remainder of this paragraph.

55.    Admitted.

56.    Admitted that Mr. Nordby's presentation included an explanation of the Fourteenth Amendment's prohibition on racial gerrymandering and the requirements of article III, section 21, of the Florida Constitution.

57.    The accuracy of the quote from Mr. Nordby's presentation is admitted.

58.    The accuracy of the quote from Mr. Nordby's presentation is admitted.

59.    The accuracy of the quote from Mr. Nordby's presentation is admitted.

60.     Admitted that Mr. Nordby's presentation stated "Section 5 of the Voting Rights Act originally applied to only five Florida counties. It's now unenforceable following the Shelby County vs. Holder decision, but the Florida Constitution's non-diminishment requirements and anti-vote dilution requirements in redistricting apply to the entire state and they remain enforceable by the courts."

61.     Admitted.

### B. Developing the Enacted Plan in Committee

62.     Admitted.

63.     Admitted that the four plans workshopped at the November 17, 2021 subcommittee meeting all included a district that included portions of Tampa and St. Petersburg. President Passidomo is without knowledge as to the Plaintiffs' definitions of "Black population centers" and "whiter portions of southern Pinellas County" and therefore denies the remaining allegations in this paragraph.

64.     Admitted that Figure 2 appears to depict a portion of public submission P000S0042 and that the putative author of public submission P000S0042, Nicholas L.V. Warren, described its configuration at the November 17, 2021 subcommittee meeting. Denied that Figure 2 depicts

district assignments for all census blocks in the region shown. President Passidomo is without knowledge as to the remaining allegations in this paragraph, which are therefore denied.

65.    The accuracy of the quotation from Mr. Warren's comments to the subcommittee is admitted.

66.    The accuracy of the quotation from Senator Bracy is admitted.

67.    The accuracy of the quotation from Mr. Ferrin is admitted.

68.    The accuracy of the quotation from Senator Bracy is admitted.

69.    Denied.

70.    Admitted.

71.    Admitted.

72.    Admitted.

73.    The accuracy of the quotation from Senator Bracy is admitted. The remainder of this paragraph characterizing Senator Bracy's comments at the November 17, 2021, subcommittee meeting is denied.

74.    The accuracy of the quotation from Senator Burgess is admitted.

75.    The accuracy of the quotation from Senator Bracy is admitted. The remainder of this paragraph characterizing Senator Bracy's comments is denied.

76.    The accuracy of the quotation from Mr. Ferrin is admitted.

77.    Admitted.

### C. Passage of the Enacted Plan

78.    Admitted that the full Senate took up Plan 8058 on January 19, 2022. The accuracy of the quotation from Senator Rodrigues is admitted. The remainder of this paragraph is denied.

79.    The accuracy of the quotation from Senator Rodrigues is admitted.

80.    The accuracy of the quotation from Senator Rodrigues is admitted. The remainder of this paragraph characterizing Senator Rodrigues's comments is denied.

81.    Admitted.

82.    Admitted that the Senate sent Plan 8058 to the Florida House of Representatives for deliberations.

83.    Admitted.

84.    The accuracy of the quotation from Speaker Sprowls is admitted.

85.    The accuracy of the quotation from Representative Leek is admitted.

86.    The accuracy of the quotation from Representative Leek is admitted.

87.    Admitted.

88.    The accuracy of the quotation from Representative Learned is admitted.

89.    The accuracy of the quotation from Representative Learned is denied.

90.    The accuracy of the quotation from Representative Learned regarding a congressional district configuration is admitted. The remainder of this paragraph is denied.

91.    Admitted.

92.    Admitted.

93.    Denied that "the Legislature's predominant goal in drawing the Challenged Districts was to avoid diminishing Black voters' ability-to-elect in District 16."  The remainder of this paragraph contains legal arguments and conclusions to which no response is required.

94.    Denied.

95.    Denied.

96.     Denied that race was the central consideration in mapmaking and traditional, race neutral criteria were subordinated to racial considerations in the Enacted Plan. The second sentence contains legal arguments and conclusions to which no response is required.

97.     Denied that either direct or circumstantial evidence "point to racial predominance." Admitted that Figure 3 appears to depict a portion of the Enacted Plan. Denied that Figure 3 depicts district assignments for all census blocks in the region shown and all of the boundaries of Hillsborough and Pinellas County.

98.     Admitted that the bridges connecting Pinellas and Hillsborough Counties have their eastern terminus in District 14 rather than District 16. The remaining allegations in this paragraph are denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    The allegation that race was the predominant factor in the drawing of the Challenged Districts is denied. The cited case speaks for itself.

This paragraph otherwise contains legal arguments and conclusions to which no response is required.

104.   The allegation that the Legislature did not "narrowly tailor its use of race" is denied. This paragraph otherwise contains legal arguments and conclusions to which no response is required.

105.   Denied that the Legislature was required to identify a compelling interest justifying the Enacted Plan because race was not the predominant factor in its configuration.

106.   This paragraph contains legal arguments and conclusions to which no response is required.

107.   This paragraph contains legal arguments and conclusions to which no response is required.

108.   Admitted that the Senate's counsel stated that "[t]here is no predetermined or fixed demographic percentage used at any point in that functional analysis." The remaining allegations in this paragraph are denied.

109.   Denied.

110.   Admitted that legislators and political operatives proposed alternative configurations of Florida Senate districts during the redistricting cycle following the 2010 Census. Denied that Florida Senate districts drawn

on the basis on 2010 Census data constitute "alternative configurations" that could be adopted following the 2020 Census.

111.   Admitted that Representative Caldwell proposed Plan H079S9073 during the 2015 legislative redistricting process. Admitted that Figure 4 appears to depict a portion of Plan H079S9073. Denied that Figure 4 depicts district assignments for all census blocks in the region shown.The remainder of this paragraph contains legal arguments and conclusions to which no response is required.

112.   Admitted that Senators Clemons and Braynon filed redistricting plans during the 2015 special session.

113.   Admitted.

114.   President Passidomo is without knowledge as to the standard by which Plaintiffs claim alternative redistricting plans filed in 2015 "garnered significant media attention," and these allegations are therefore denied.

115.   President Passidomo is without knowledge of the intentions of the unnamed "[o]ther senators" in 2015 referenced in this paragraph, and these allegations are therefore denied. The allegation that the newspaper quotation in footnote 6 supports the allegation in this paragraph is specifically denied.

116.   Admitted that political operative Matthew Isbell criticized the configuration of the Florida Senate districts adopted after the 2010 Census. The accuracy of the quotation from Mr. Isbell's article is admitted. The remaining allegations in this paragraph are denied.

117.   Denied.

118.   President Passidomo is without knowledge of the identities or views of the unnamed "commentators" regarding the configuration of Florida Senate districts referenced in this paragraph and these allegations are therefore denied.

119.   President Passidomo is without knowledge of any analysis purportedly conducted by Mr. Isbell of the Subcommittee's draft plans or the "2021 Isbell Plan" purportedly proposed by Mr. Isbell, and these allegations are therefore denied.

120.   The accuracy of the quotation from Mr. Isbell's article referenced in footnote 9 is admitted.

121.   Admitted that Plan P000S0042 was submitted to the Florida Legislature by Nicholas L.V. Warren on November 11, 2021.  President Passidomo is without knowledge as to whether the submission of Plan

P000S0042 by Mr. Warren "prompt[ed] the inquiry from Sen. Bracy" and that allegation is therefore denied.

122.   Admitted that proposed district configurations from Mr. Isbell and Mr. Warren "received press coverage" during the 2020 cycle to the extent footnote 10 discloses press coverage. The remaining allegations in this paragraph are denied.

123.   President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

124.   Denied.

125.   President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

126.   The cited case speaks for itself.  Admitted that the table in this paragraph accurately reflects the designated statistics for District 19 in the Benchmark Plan and District 16 in the Enacted Plan.  President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Demonstration, Isbell, and Warren (Plan 42) plans and therefore denies these allegations.

127.   The cited case speaks for itself.  Admitted that the table in this paragraph accurately reflects the designated statistics for District 19 in the Benchmark Plan and District 16 in the Enacted Plan.  President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Demonstration, Isbell, and Warren (Plan 42) plans and therefore denies these allegations.

128.   Admitted that the table presented in paragraph 127 reflects a black share of Democratic Party Primary Voters and registered voters between 48.12% and 53.37% over the elections represented. Admitted that the table presented in paragraph 127 accurately reflects the designated statistics for District 19 in the Benchmark Plan and District 16 in the Enacted Plan. President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the statistics regarding the Demonstration, Isbell, and Warren (Plan 42) plans and therefore denies these allegations.

129.   Admitted.

130.   The cited cases speak for themselves.  Admitted that the table presented in paragraph 130 reflects the general election performance in statewide elections from 2012-2020. Admitted that the table in this paragraph accurately reflects the designated statistics for District 19 in the

Benchmark Plan and District 16 in the Enacted Plan. President Passidomo lacks knowledge or information sufficient to form a belief as to the truth of the statistics regarding the Demonstration, Isbell, and Warren (Plan 42) plans and therefore denies these allegations.

131.   Denied.

132.   Denied.

## CLAIM FOR RELIEF

### COUNT ONE

### Racial Gerrymandering
### in Violation of the Fourteenth Amendment to the U.S. Constitution
### (42 U.S.C. § 1983)

133.   President Passidomo incorporates by reference the responses to the previously alleged paragraphs.

134.   Admitted.

135.   This paragraph contains legal arguments and conclusions to which no response is required.

136.   Denied.

137.   Denied.

138.   Denied.

139.   Denied.

## RESPONSE TO PRAYER FOR RELIEF

President Passidomo denies that Plaintiffs are entitled to the requested

relief.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs' requested relief is barred by the *Purcell* principle.

2.    Plaintiffs' requested relief is barred by the doctrine of laches.


Dated: May28, 2024

Respectfully submitted,

*/s/  Daniel Nordby*

CARLOS REY (FBN 11648)
**FLORIDA SENATE**
404 South Monroe Street
Tallahassee, Florida 32399
(850) 487-5855
*Rey.Carlos@flsenate.gov*

RICKY L. POLSTON (FBN 648906)
DANIEL E. NORDBY (FBN 14588)
ALYSSA L. CORY (FBN 81977)
KASSANDRA S. REARDON (FBN 1033220)
**SHUTTS & BOWEN LLP**
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717
*RPolston@shutts.com*
*DNordby@shutts.com*
*ACory@shutts.com*
*KReardon@shutts.com*

*Counsel for Kathleen Passidomo,*
*in her official capacity as President of the Florida Senate*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2024, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

<u>/s/ Daniel Nordby</u>
Attorney