IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KETO NORD HODGES, et al.,

   *Plaintiffs*,

   v.                                        Case No. 8:24-cv-879

KATHLEEN PASSIDOMO, et al.,

   *Defendants*.

_____/

**THE SECRETARY'S MOTION REGARDING THE SUFFICIENCY
OF PLAINTIFFS' DISCOVERY OBJECTIONS  AND MEMORANDUM**

     In this racial gerrymandering case, Doc.28 at 1, this Court must assess whether race predominated in the legislature's decision to draw certain state senate districts and, if so, whether the legislature narrowly tailored its use of race; Plaintiffs don't question whether the use of race serves as a compelling interest. Doc.1 ¶¶ 8-9. To assess racial predominance, all inputs into the legislative process remain relevant. Yet Plaintiffs object to the Secretary's discovery on inputs. With good-faith attempts to resolve the matter having proven unsuccessful, the Secretary moves under Federal Rule of Civil Procedure 36(a)(6) to assess Plaintiffs' objections to the Secretary's requests for admissions. The Secretary maintains that the objections are unjustified. As such, this Court should overrule the objections, require answers, and assess expenses against Plaintiffs under Rule 36(a)(6) and Rule 37(a)(5).

1

## Discovery Requests

On June 21, 2024, the Secretary served his first set of requests for admissions on Plaintiffs. **Attachment 1** (requests for admissions). On July 22, Plaintiffs responded to those requests. **Attachment 2** (responses). At issue are Requests 3, 4, and 5, and Plaintiffs' responses to the requests. The requests and the responses are as follows:

**Request 3:** Admit that members or officers of the American Civil Liberties Union of Florida discussed redistricting with members of the state legislature during the 2022 redistricting cycle.

> **Response:** Plaintiffs object on the grounds that this request (1) seeks information that is not relevant to any party's claim or defense, and (2) calls for the admission of information protected by the ACLU of Florida's First Amendment privilege.

**Request 4:** Admit that members or officers of the American Civil Liberties Union of Florida discussed redistricting with Matthew Isbell during the 2022 redistricting cycle.

> **Response:** Plaintiffs object on the grounds that this request (1) seeks information that is not relevant to any party's claim or defense, and (2) calls for the admission of information protected by the ACLU of Florida's First Amendment privilege.

**Request 5:** Admit that members or officers of the American Civil Liberties Union of Florida encouraged Matthew Isbell to participate in the 2022 redistricting cycle.

> **Response:** Plaintiffs object on the grounds that this request (1) seeks information that is not relevant to any party's claim or defense, and (2) calls for the admission of information protected by the ACLU of Florida's First Amendment privilege.

The parties exchanged discovery letters concerning these (and other) discovery requests, and on September 12, the parties conducted a meet and confer regarding the dispute. The parties reached an impasse. This motion follows.

## Legal Standard

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible," and a party is "entitled to any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (cleaned up). To that end, Rule 36 allows a party to propound requests for admissions. And Rule 36(a)(6) says that the "requesting party may move to determine the sufficiency of an" "objection" to a request for admission. "Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6). The court should also assess expenses, including attorney's fees, under Rule 36(a)(6) and Rule 37(a)(5).

## Argument

Plaintiffs raise unjustified objections to the requests for admissions. The requests are relevant to Plaintiffs' racial gerrymandering claim (and any potential remedy in this case). Based on discovery in other redistricting cases concerning the 2022 redistricting cycle—*Common Cause Florida v. Byrd*, 4:22-cv-109 (N.D. Fla. 2022) (three-judge court), and *Black Voters Matter v. Byrd*, 2022-cv-666 (Fla. 2d Jud. Cir. 2022)—the Secretary has good-faith bases in making his requests. Finally, the First Amendment doesn't serve as a bar to discovery in this instance.

**I.   The Requests Are Relevant to the Issues in this Case.**

Plaintiffs' first objection is relevance. But, in "the context of discovery," relevance "has been construed broadly to encompass any matter that bears on, or that

3

reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge*, 1 F.4th at 1276 (cleaned up). This low bar is easily cleared in this racial gerrymandering case where liability and remedy haven't been bifurcated.

A central question in racial gerrymandering cases is whether race predominated in the drawing of districts—whether racial considerations "subordinated traditional race-neutral districting principles," like compactness and respect for natural and geographic boundaries. *Miller v. Johnson*, 515 U.S. 900, 916 (1995). To assess whether race predominated, courts often employ the non-exhaustive *Arlington Heights* factors such as specific sequences of events leading up to a redistricting package, procedural and substantive departures from the typical redistricting process, contemporary statements from legislators, reasonable alternative maps, and foreseeability of disparate impacts, for example. That's what the district court did in *Jacksonville Branch of the NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229 (M.D. Fla. 2022), another racial gerrymandering case brought by ACLU attorneys. There, relying on several Supreme Court cases, the court expressly said "[t]o determine legislative intent, the Court is guided by the Supreme Court's decision in *Village of Arlington Heights*," and its sensitive, fact-intensive inquiry. *Id.* at 1244 (collecting cases).

Also relevant is the Florida Constitution's prohibition on taking partisanship into account when drawing redistricting plans. Fla. Const. art. III, § 21(a). In the past, the Florida Supreme Court has held that efforts by third parties to influence legislators tainted the process and infected the legislature's later remedial efforts. *See League of Women Voters of Fla. v. Detzner*, 172 So. 3d 363, 378-93 (Fla. 2015).

All this is to say that under both federal and state precedent, the inputs for the legislative process matter when it comes to the output—the redistricting plan itself. *See, e.g.*, *Jacksonville Branch of the NAACP*, 635 F. Supp. 3d at 1244. Whether members of the ACLU, a politically active organization, communicated with the Florida Legislature (Request 3) is relevant. It could provide information on knowledge and foreseeability of racial impact, for example. Or it could highlight a partisan bent that influenced the vote of some legislators. Or it could shed light on whether other plans were possible at the time the legislature was undertaking its work. Or it could just lead to other discoverable information. Also relevant, for much of the same reasons, is the request concerning discussions with Matthew Isbell, a known Democratic map drawer (Request 4). So too for the request concerning whether the ACLU encouraged Mr. Isbell to participate during the redistricting process (Request 5).

II.     **The Secretary Has Good Reason to Make the Requests.**

**A.** As to Request 3, Plaintiffs already produced documents showing that an attorney with the ACLU appeared before redistricting committees, submitted district maps to the legislature, and emailed at least one state senator during the 2022 redistricting cycle. **Attachment 3** (excerpts from Plaintiffs' document production).

That, alone, should be sufficient to admit Request 3. Yet Plaintiffs refuse to answer it. Based on the meet and confer, it's Plaintiffs' position that the ACLU attorney—who works for the ACLU, whose name is on the "staff" list of the ACLU

website,[1] and whose salary is likely paid by the ACLU—isn't a "member" of the ACLU. This, of course, goes against the "plain and ordinary meaning," M.D. Disc. Handbook III(A), of "member": "one of the individuals composing a group." *Member*, Merriam-Webster Online Dictionary.

True, Plaintiffs also produced documents, suggesting that the attorney appeared before the legislature as an individual, and not as a representative or official of the ACLU. But Request 3 doesn't turn on individuals appearing in individual/unofficial or representative/official capacities. It simply asks whether a member of the ACLU appeared before the legislature and discussed redistricting. Based on Plaintiffs' own document production in this case, the answer is "yes."

Discovery in other redistricting cases similarly suggests that the answer is "yes." The Secretary took depositions of legislators, and at least one legislator, Ben Diamond, testified that he spoke with members of the ACLU about redistricting around the time of the 2022 redistricting cycle:

> Q. Did you speak with anyone from the ACLU about redistricting?
>
> A. I believe so, yes.
>
> Q. Do you know who you spoke to?
>
> A. So I met with—but now that I'm looking again at these dates, I think it was before the session. I had a meeting with Pamela Burch Fort, who I believe works with the ACLU, and I also spoke—I believe I spoke with Kara Gross with the ACLU.
>
> Q. And did you speak about redistricting with them?

---

[1] https://www.aclufl.org/en/about/staff.

    A.    Yes.

**Attachment 4** (excerpts from Ben Diamond deposition).

    **B.** As to Requests 4 and 5, based on discovery from other redistricting cases, the Secretary knows that Matthew Isbell is a mapmaker aligned with the Democratic Party. Mr. Isbell has produced documents to the Secretary, showing that he spoke with legislators and staff about redistricting during the 2022 redistricting cycle. **Attachment 5** (document created by Mr. Isbell). Mr. Isbell also produced documents showing that he spoke with Democratic operatives about redistricting decisions—including the shapes of senate districts in Tampa Bay, like old Senate District 19—in racial and partisan terms. **Attachment 6** at 10 (Mr. Isbell's texts (in blue)).

    Significantly, Mr. Isbell produced 2,389 messages and 114 graphics, spanning 273 pages, with an ACLU attorney about redistricting during the 2022 redistricting cycle. **Attachment 7** (Mr. Isbell's messages with the ACLU attorney). The two discussed the legal merits of potential state and federal redistricting claims, that the attorney "submitted a tampa bay senate map," "submitted 4" maps to the legislature, and that the "congressional map drawn by staff last week and picked by [Sen.] Ray Rodrigues today incorporates ideas I [the attorney] proposed 3 days after the first staff maps were released back in November." *E.g.*, **Attachment 7** at 3, 107, 110, 135.

    The Secretary is accordingly seeking third-party discovery from Mr. Isbell in the present case. This information can lead to other information concerning the 2022 redistricting cycle and about why the legislature drew particular district lines.

**C.** In short, based on the information the Secretary already has, his requests concern an input in the redistricting process: how members of the public, be they experienced mapmakers or members from political organizations, might have influenced the 2022 redistricting cycle and might have encouraged legislators and staff to *not make*—or perhaps *to make*—race-based redistricting decisions. The Secretary has a good-faith basis to conclude that members of the ACLU spoke to legislators and staff about redistricting during the 2022 redistricting cycle, that Mr. Isbell spoke to legislators and staff about redistricting during the 2022 redistricting cycle, and that Mr. Isbell and members of the ACLU spoke to one another about redistricting and coordinated efforts regarding redistricting. For now, the requests seek confirmation of these facts. This confirmation may later lead to other, relevant information about the influence the ACLU-led effort had on the legislature.

### III. The First Amendment Doesn't Serve as a Bar to the Secretary's Inquiry.

Finally, the First Amendment can't stand in the way of answers. For starters, the First Amendment's associational privilege doesn't shield clandestine meetings with public officials. That makes the First Amendment objection wholly inapplicable to Request 3, which simply asks *whether* the ACLU discussed redistricting with members of the Florida Legislature during the 2022 redistricting cycle.

More importantly, as to Requests 3 to 5, Plaintiffs failed to make a prima facie showing that First Amendment rights were implicated in or affected by the requests. *See Fla. State Conf. of Branches & Youth Units of the NAACP v. Lee*, 568 F. Supp. 3d 1301,

1307 (S.D. Fla. 2021). Plaintiffs merely raised a boilerplate privilege objection, without "demonstrat[ing] how disclosure of the *specific* information" the Secretary requests would have the effect of "inducing members to withdraw" or "dissuading others from joining because of fear of exposure." *Id.* (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)) (cleaned up, emphasis in the original). In other words, there's no explanation or theory of how the right to associate would be harmed. That in and of itself defeats Plaintiffs' First Amendment objections.

## Conclusion

The Secretary asks this Court to overrule Plaintiffs' objections, require them to answer the requests, and assess fees and expenses against Plaintiffs under Rule 36(a)(6) and Rule 37(a)(5).

September 16, 2024

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

10

**Local Rule 3.01(g) Certification**

I certify that on September 12, 2024, the attorneys for Plaintiffs and the Secretary, following an exchange of discovery letters, conducted a meet and confer. The disputes raised in this motion were not resolved. In reaching an impasse, the Secretary informed Plaintiffs that he would be filing a motion. Plaintiffs oppose the Secretary's motion. .

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**Certificate of Compliance**

I certify that this motion complies with the typography requirements of Local Rule 1.08, and that it complies with Local Rule 3.01(a)'s page requirements.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**Certificate of Service**

I certify that on September 16, 2024, the foregoing was electronically served on all counsel of record.

/s/ Mohammad O. Jazil
Mohammad O. Jazil