IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, *et al.*,

    *Plaintiffs*,

v.

KATHLEEN PASSIDOMO, in her official capacity as President of the Florida Senate, *et al.*,

    *Defendants*.

Case No. 8:24-cv-879

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SECRETARY OF STATE'S MOTION REGARDING THE SUFFICIENCY OF PLAINTIFFS' DISCOVERY OBJECTIONS

Plaintiffs respectfully oppose Defendant Secretary of State's Motion Regarding the Sufficiency of Plaintiffs' Discovery Objections and Memorandum (ECF No. 45) ("Motion") and state as follows:

### SUMMARY OF ARGUMENT

The Secretary's Motion seeks the Court's intervention for permission to use the discovery process to investigate the personal life and personal politics of Plaintiffs' counsel. Plaintiffs are Florida registered voters whose sole claim in this action is a Fourteenth Amendment racial-gerrymandering claim challenging two Florida Senate districts the Florida Legislature adopted in 2022. But the Secretary's discovery efforts have not focused on the adoption of the challenged map or the nature of the communities it divides or groups together. Instead, the Secretary's discovery efforts

have been focused on the citizen advocacy of Plaintiff voters' lead attorney, the activities of the civil rights organization that employs him, and, to a lesser extent, Plaintiff voters themselves. The Secretary's discovery appears calculated to embarrass Plaintiffs' counsel and to interfere with his role as Plaintiff voters' counsel by making him a fact witness and driving a wedge between him and his clients. Plaintiff voters maintain that discovery concerning their counsel's citizen advocacy is irrelevant, but the Secretary will continue with these inquiries unless the Court exercises its inherent power to control the scope of discovery, which Plaintiff voters ask the Court to do.

The Secretary's Motion seeks to compel admissions that are neither relevant to the Florida Senate's redistricting process nor proportional to the needs of this case. Discovery is designed to be broad, but not without limits: standards of relevance and good-faith inquiry restrict the scope of discovery in order to narrow the dispute to its most critical components. Discovery concerning the politics, correspondence, and personal life of Plaintiffs voters' counsel are outside of these boundaries, and the Court should deny the Secretary's Motion.

## STATEMENT OF THE CASE

### I. Plaintiffs, Their Claims, and Their Counsel

Plaintiffs are five registered voters residing in Hillsborough and Pinellas Counties. Plaintiff voters challenge two Florida Senate districts as racially gerrymandered in violation of the Fourteenth Amendment. The issues to be decided by the Court in this action are: (1) whether race predominated over other redistricting criteria in the Senate's drawing of the two challenged districts, and (2) whether the use

of race was narrowly tailored to advance any compelling interest. *See* Order Denying Mot. to Dismiss, ECF No. 33 at 4–5 ("[T]he elements of a racial gerrymandering claim [are] that race predominated over all other redistricting criteria and [the use of race] was not narrowly tailored to advance any compelling interest.") (internal quotes omitted).

Plaintiff voters are represented in this litigation by attorneys with the American Civil Liberties Union Foundation of Florida, Inc. ("ACLU of Florida Foundation"), the Civil Rights & Racial Justice Clinic at NYU School of Law, and their undersigned local counsel, Butler Weihmuller Katz Craig LLP. Plaintiff voters' lead counsel is Nicholas Warren, Esq., who is employed by the ACLU of Florida Foundation. Neither the ACLU of Florida Foundation nor its affiliated 501(c)(4) organization, the American Civil Liberties Union of Florida, Inc., are parties to this suit.

Apart from being lead counsel for Plaintiff voters, Attorney Warren is a registered voter himself. One of a handful of Florida attorneys with a deep knowledge of the law regarding redistricting, he submitted a proposed Senate district map to the Florida Legislature during the 2021–22 legislative redistricting process through the Legislature's public submissions portal. The Legislature rejected his proposed map.

## II. The Secretary's Targeting of Plaintiff Voters' Lead Counsel

The Secretary served requests for admission on Plaintiff voters asking them to admit that members or officers[1] of the ACLU of Florida communicated with members

---

[1] The requests defined members and officers "to include all members, fellows, students,

3

of the Legislature (Request 3) and with an individual named Matthew Isbell, whom the Secretary describes as a "known Democratic map drawer" (Requests 4 & 5). Motion at 5. Plaintiff voters objected on the grounds that these requests were: (1) not relevant to any party's claim or defense, and (2) call for the admission of information protected by the ACLU of Florida's First Amendment privilege. ECF No. 45-2.

After Plaintiff voters served their objections, the Secretary's counsel met and conferred with Plaintiffs' counsel. The parties were unable to resolve the objections, and the Secretary subsequently filed the Motion. Defendant Kathleen Passidomo, the President of the Florida Senate, did not join in the requests or the Motion.

The Secretary's Motion attached several hundred pages of unredacted private text messages between Attorney Warren and Mr. Matthew Isbell. The messages, which were clearly intended to be private, use profanity, say unflattering things about public figures and colleagues, and out the sexual orientation of both Attorney Warren and a Republican political consultant completely unconnected to this dispute. The Secretary did not notify Plaintiff voters' counsel about the existence of these messages or his intent to file them. The placement of these communications in the public record was not necessary to support the Secretary's Motion, is disfavored by the Court's Middle District Discovery Handbook, and appears calculated to cause harm to Attorney Warren personally and professionally.

In addition to the discovery that is the subject of the Motion, the Secretary

---

residents, agents, leadership, executives, managers, or any other individuals associated or affiliated with the organization." ECF No. 45-1 at 2.

served a subpoena duces tecum on Attorney Warren seeking all "documents or communications with members or staffers of the Florida Legislature during the 2022 redistricting cycle related to redistricting," all "documents or communications with any print or online media outlet . . . relating to the 2022 redistricting cycle" during the same period, and "any draft congressional or legislative district maps that [Attorney Warren] created during the 2022 redistricting cycle." Exhibit 1 at 7.

## MEMORANDUM OF LAW

"Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Although relevance for discovery purposes is construed broadly, its scope is limited by at least two considerations.

First, parties may not use requests for admissions as a means to harass an adversary. Fed. R. Civ. P. 26(g)(1)(B)(ii); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) (noting the purpose of requests for admission is not to "harass the other side"). The risk of harassment is particularly acute when discovery requests target a party's attorneys. This Court has frequently held that discovery directed at "attorneys who represent parties in an action present ripe opportunities to harass the attorney and the party, cause delay and disrupt the case." *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, No. 6:08-MC-79-ORL-28GJK, 2008 WL 11395484, at *6 (M.D. Fla. Sept. 25, 2008); *see also LaJoie v. Pavcon, Inc.,* No. 97-312-CIV-FTM-25D, 1998 WL 526784, at *1 (M.D. Fla. June 24, 1998).

Second, as the text of Rule 26(b)(1) makes clear, relevance is not measured in a

vacuum, but rather assessed in relation to the proportional needs of the case. *See, e.g.*, *Azzia v. Royal Caribbean Cruises Ltd.*, No. 15-24776-CV, 2018 WL 11233847, at *1 (S.D. Fla. Feb. 12, 2018) ("Under the 2015 Amendment to Rule 26(b), the traditionally liberal scope of discovery must be juxtaposed against proportionality considerations in the case."). Again, these concerns are especially acute when discovery targets the opposing party's counsel. Parties seeking discovery directed at the other side's attorney are often required to demonstrate that the means proposed "is the only practical means available for obtaining the information." *LaJoie*, 1998 WL 526784, at *3 (citing *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301 (S.D. Fla. 1990)).

## ARGUMENT

### I. The Secretary's requests for admission are designed to harass and intimidate Plaintiff voters' attorney and should not be permitted.

The Secretary's Motion makes a pretextual argument that he is trying to determine the effect that "members of the public, be they experienced mapmakers or members from political organizations," had on the Legislature. But the Secretary's discovery is directed at only one member of the public (Plaintiffs' counsel) and one "political organization" (Plaintiff's counsel's employer). The Secretary's argument notwithstanding, these items are plainly directed at the personal politics and pre-suit activities of Plaintiff voters' counsel.

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "[L]imitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in

6

such a manner as to annoy, embarrass or oppress the person subject to the inquiry." *Id.* at 507–08.

A number of things indicate the Secretary's bad faith. Most egregious is the hundreds of pages of private messages the Secretary attaches in support of his Motion without redaction or consultation with Plaintiff voters' counsel.[2] The Secretary's filing of these 273 pages of messages in the public record was unnecessary—he cites *only four of those pages in his Motion*—and therefore appears calculated solely to humiliate Attorney Warren.

Second, the documents attached to the Secretary's Motion demonstrate that the Secretary is already well aware of Attorney Warren's communications and thus does not require admissions by Plaintiff voters.

Third, with respect to legislative communications, if the Secretary truly sought to understand the influence that members of the public had on the 2022 redistricting

---

[2] The Middle District Discovery handbook states:

> Correspondence exchanged during the course of litigation either between opposing counsel or between counsel for one party and an unrepresented party should be filed with the Court only to comply with an order of the Court or when necessary to the presentation and consideration of a motion and only when the filing of traditional discovery material will clearly not suffice for the purpose. **Counsel should carefully redact correspondence to exclude irrelevant and prejudicial material, e.g., settlement discussions.**

Middle District Discovery (2021) at Section I.C.1 (emphasis added). It further provides: "Discovery in this district should be practiced with a spirit of cooperation and civility." *Id.* § I.A.1.

cycle, his discovery requests would be better directed at his co-Defendant the Senate President and other legislators and staff who actually developed the enacted redistricting plan, maintain records of public correspondences with legislative offices, and have information of correspondences by constituents including and beyond ACLU members. The Secretary seems to be aware of the efficiency advantages of this strategy, having employed it in "other redistricting cases" when he "took depositions of legislators." Motion at 6. Yet, the Secretary skipped that step in this case, instead targeting Plaintiffs' attorneys. Indeed, the Secretary recently served a third-party subpoena (Exhibit A) not on any legislators or staff, *but on Plaintiffs' counsel, Attorney Warren*. This was improper. *See Hall v. Louisiana*, No. 12-657-BAJ-RLB, 2014 WL 1652791, at *4 (M.D. La. Apr. 23, 2014) (quashing subpoena against lawyer in redistricting case who had earlier testified to the legislature about redistricting and reiterating earlier ruling that "the outcome of this case will not be based upon any lobbying efforts made by anyone").

Finally, as discussed more fully below, the Secretary's requests are not posed with the sort of specificity one might expect to accompany a genuine inquiry into the legislative process. Indeed, the requests seek only admissions to the fact of communications with legislators and third parties without probing the substance of these communications—they merely seek to confirm that they occurred. In short, even following the shaky logic of the Secretary's purported rationale for making the requests, they are too misdirected, overly broad, and superficial to be relevant to a party's claim or defense.

**II.     The Secretary's requests are irrelevant to the issue of whether race predominated in the drawing of the challenged Senate districts or whether the use of race was narrowly tailored to serve a compelling interest.**

Either the two challenged districts are racially gerrymandered, or they are not. If they are, there is nothing that anyone from ACLU of Florida might have said to the Legislature or to Mr. Isbell that would affect the racially gerrymandered character of the districts or Plaintiff voters' standing to challenge the districts as unconstitutional. The Secretary's attempted probe is a sideshow.

The Secretary's requests must be sufficiently relevant to Plaintiffs' sole claim of racial gerrymandering. That is, considering the proportional needs of the case, they must be "more than tangentially related to the issues that are actually at stake in the litigation." *Flynn v. Square One Distrib., Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *4 (M.D. Fla. May 25, 2016). The requests at issue fail to clear that low bar. They seek admissions that ACLU-associated individuals communicated with legislators (Request 3) and other third parties (Requests 4 and 5) about redistricting during the period from September 2021 to April 2022.

The Secretary urges that these admissions are relevant to whether race predominated in the drawing of the challenged districts because they might reveal something about the Legislature's intent in enacting the challenged districts. Motion at 4. The Secretary makes no contention that the Legislature relied upon information submitted by Attorney Warren in arriving at the final district map. In fact, the Legislature rejected the map submitted by Attorney Warren.

9

Although legislative intent is undoubtedly relevant to the racial predominance question, it cannot justify probing any *third-party* who communicated with state legislators without evidence that those communications were actually relied upon by the Legislature in the drafting process. *Cf. Hall*, 2014 WL 1652791, at *7 ("Plaintiffs have not shown [] why the subjective intent or motivations of an individual citizen regarding a decision by the legislature as to whether to enact a law is relevant."). Legislators regularly receive mountains of constituent correspondence about proposed legislation. To find that any time legislative intent is at issue, every person who sent a postcard, sent an email, or made a phone call to a legislator's office is subject to discovery would stretch the definition of relevance to its breaking point.

The very cases the Secretary cites prove this point. They mention third-party communications only in the context of how lawmakers reacted to those specific communications. *See League of Women Voters of Fla. v. Detzner*, 172 So. 3d 363, 379–86 (Fla. 2015) (citing as relevant evidence that legislators provided third parties "advance, non-public copies of draft redistricting maps," and generally relied on their expertise and opinions); *Jacksonville Branch of NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229, 1290–91 (M.D. Fla. 2022) (citing as relevant evidence city councilmembers' reactions to public comments).

Here, the Secretary makes no contention that legislators who supported the enacted challenged districts were influenced by comments ACLU-associated individuals made, let alone that those legislators were influenced to support the districts for racial or non-racial reasons. Without such indication, the Secretary's

10

general request regarding *any* communication to the Legislature about redistricting (Request 3) is overly broad and lacks any arguable relevance. *See, e.g., Landberg ex rel. Landberg v. Universal Trailer Corp. Horse/Livestock Grp.*, No. 1:06-CV-2971-BBM, 2008 WL 11334018, at *7 (N.D. Ga. Mar. 14, 2008) (rejecting as overbroad and "not relevant to the issues involved in this case" a request for admission that two parties had *ever* entered into a contract together).

Requests 4 and 5 fall even further afield. They do not pertain to third party communications with the Legislature at all but, instead, to communications between third parties. Even if communications with the Legislature may, if relied upon, be relevant to the Legislature's intent, communication between non-legislators is not.

The Secretary's hypotheticals do not make his requests relevant. The Secretary suggests the requests could "provide information on knowledge and foreseeability of racial impact." Motion at 5. First, knowledge and foreseeability of racial impact is insufficient to show racial predominance. *See Shaw v. Hunt*, 517 U.S. 899, 905 (1996) ("A legislature may be conscious of the voters' races without using race as a basis for assigning voters to districts."); *Bush v. Vera*, 517 U.S. 952, 958 (1996) ("Strict scrutiny does not apply merely because redistricting is performed with consciousness of race. Nor does it apply to all cases of intentional creation of majority-minority districts."). Second, whether the Senate knew or foresaw racial impact in its map is best answered by asking the Senate (a party to this case) and its members directly.

The Secretary next argues his requests could "highlight a partisan bent that influenced the vote of some legislators." Motion at 5. But Plaintiffs have not raised a

11

partisan gerrymandering claim, nor have Defendants raised partisan gerrymandering as a defense. Merely asking whether there were communications between third parties and legislators—as opposed to asking about the *contents* of communications that *influenced a legislator to support or oppose the challenged districts for a partisan reason*—is too broad to be relevant here.

The Secretary last offers that his requests "could shed light on whether other plans were possible at the time the legislature was undertaking its work." Motion at 5. Yet, whether other plans were possible is an objective question answered by expert reports and data analysis. *See, e.g., Alexander v. S.C. State Conf. of NAACP*, 144 S. Ct. 1221, 1250 (2024) (describing the process of determining the possibility of alternative maps by "control[ling] for any number of specified criteria, including prior voting patterns and political party registration"). Whether an ACLU-affiliated person contacted a legislator does not at all bear on whether another plan was or was not possible.

Fundamentally, the Secretary's bare-bones, overbroad requests ask about merely the *existence* of communications about redistricting—not their content—and therefore cannot possibly "provide information on knowledge and foreseeability of racial impact," "highlight a partisan bent that influenced the vote of some legislators," or "shed light on whether other plans were possible." But even if they could—even if they would "just lead to other discoverable information," Motion at 5—they would be inappropriate. "Rule 36 is not a discovery device," and the Secretary's use of these Requests is "beyond the proper scope of the rule and improper." *Modern, Inc. v. State*

*of Fla., Dep't of Transp.*, No. 6:03-CV-718-ORL-31-DAB, 2005 WL 1676809, at *2 (M.D. Fla. July 18, 2005) (quoting *Pickens v. Equitable Life Assur. Soc. of U.S.*, 413 F.2d 1390, 1393–1394 (5th Cir. 1969)).

### III. The Secretary's requests have the effect of chilling protected First Amendment activities.

Independent of any dispute as to relevance, the Secretary's requests are barred by the ACLU of Florida's First Amendment privilege. Plaintiffs may avoid complying with the Secretary's requests under First Amendment associational privilege if the requests will "induc[e] members to withdraw" from the ACLU of Florida and "dissuad[e] others from joining because of fear of exposure," *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1304 (S.D. Fla. 2021), or if Plaintiffs can show such requests would result in "other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 7048363, at *9 (S.D. Fla. Dec. 5, 2016) (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010)). Given the "the crucial place speech and associational rights occupy under our constitution," a plaintiff's burden to make this prima facie showing is "light." *Flynn v. Square One Distrib., Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *2 (M.D. Fla. May 25, 2016).

The ACLU of Florida is an organization made up of over thirty-five thousand civically minded members. It is also regularly involved in litigation. If each member is subject to discovery regarding their communications with the Legislature when the

13

ACLU of Florida engages in litigation involving legislative intent, members will hesitate to contact their representatives, or else withdraw from the organization to avoid being the targets of invasive discovery requests. Furthermore, the ACLU of Florida regularly represents individuals and organizations in legal proceedings adverse to the State of Florida and its subsidiary agencies and municipalities. The requests seek to chill the organization's constitutionally protected advocacy all across Florida lest that advocacy be subpoenaed in every future proceeding where the ACLU of Florida is legal counsel.

## IV. Plaintiff voters' position is substantially justified; the Secretary's is not.

Lastly, the Secretary's Motion asks for an award of fees and expenses under Rule 37(a)(5). Rule 37(a)(5)(A) provides that the Court must not order payment of fees and expenses if the opposing party's objection was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii). "Substantially justified" means that there is a "genuine dispute," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), or "if reasonable people could differ as to the appropriateness of the contested action." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir.1993) (quoting Pierce, 487 U.S. at 565).

Plaintiffs are five voters seeking this Court's relief from what they contend is racial gerrymandering that affects their ability to participate in the representative democracy promised to them by the Constitution. Their objections to discovery concerning the pre-suit communications of their counsel, or of the members of a 35,000-member organization affiliated with their counsel, is substantially justified, and

14

an award of expenses against them would be unjust.

The Secretary's position, however, is not substantially justified. The Secretary knows that the Legislature did not rely on Attorney Warren, the ACLU of Florida, or Matthew Isbell in approving the final configuration for the two challenged Senate districts. The Secretary's discovery and his Motion attaching two years' of Attorney Warren's personal correspondence are designed to harass and intimidate Plaintiff voters' counsel, orchestrate his possible disqualification, and fish for statements that are potentially embarrassing or inconsistent with positions taken in this litigation as an advocate for the litigants (as opposed to positions taken on his own behalf as a citizen). If the Court denies the Motion, as it should, the Court should award fees and expenses to Plaintiff voters under Rule 37(a)(5)(B).

## CONCLUSION

The Secretary's requests are irrelevant, disproportionate to the needs of this case, designed to embarrass Plaintiffs' counsel, and infringe on the First Amendment privilege of the ACLU of Florida and its members. Accordingly, the Court should deny the Secretary's Motion.

Respectfully submitted September 30, 2024

*/s/ James Michael Shaw, Jr.*

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

\* *Special admission*

Deborah N. Archer\*
David Chen\*
**Civil Rights & Racial Justice Clinic**
**Washington Square Legal Services, Inc.**
245 Sullivan Street
New York, NY 10012
(212) 998-6473
deborah.archer@nyu.edu
davidchen@nyu.edu

James Michael Shaw, Jr. (FBN 677851)
Naomi Robertson (FBN 1032076)
**Butler Weihmuller Katz Craig LLP**
400 North Ashley Drive, Suite 2300
Tampa, FL 33602
(813) 281-1900
jshaw@butler.legal
nrobertson@butler.legal

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2024, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/James Michael Shaw, Jr.
JAMES MICHAEL SHAW, JR., ESQ.