IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, et al.,

   *Plaintiffs*,

v.                                        Case No: 8:24-cv-879

KATHLEEN PASSIDOMO, et al.,

   *Defendants*.
_____/

**PRESIDENT PASSIDOMO'S RESPONSES AND OBJECTIONS
TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**

Senate President Kathleen Passidomo, in her official capacity, hereby responds to Plaintiffs' First Set of Requests for Admission as follows:

**GENERAL OBJECTIONS**

A. President Passidomo objects to the Requests to the extent they call for information protected by the attorney-client privilege, the attorney work-product doctrine, legislative privilege, joint defense privilege, or any other privilege or doctrine available under federal or state law, either statutory, regulatory, constitutional, or common law.

1

B.  President Passidomo objects to the Requests to the extent they impose on her obligations that exceed those imposed by the Federal Rules of Civil Procedure and relevant orders issued in this case.

C.  President Passidomo objects to the Requests to the extent they are overly broad or seek information that is neither relevant to the claim or defense of any party in this action nor proportional to the needs of the case.

D.  President Passidomo objects to the Requests to the extent they are duplicative and cumulative.

E.  President Passidomo objects to the Requests to the extent they necessarily call for a legal conclusion.

F.  President Passidomo's failure to object on a particular ground or grounds shall not be construed as a waiver of her rights to object on any additional grounds. In making these objections, President Passidomo does not in any way waive or intend to waive any additional objections, but rather intends to preserve and does preserve any additional objections should they become appropriate.

G.  President Passidomo responds to the Requests to the best of her present knowledge, information, and belief. President Passidomo continues to investigate the matters that are the subject of this litigation. The responses

set forth herein are at all times subject to additional or different information that discovery or further investigation may disclose.

Subject to and without waiving these General Objections, President Passidomo sets forth her responses and objections to the Requests as follows:

## REQUESTS

1. Admit that Article III, Section 21 of the Florida Constitution prohibits Black voters' ability to elect representatives of their choice from being diminished from their ability in Benchmark Senate District 19 in the Senate plan in effect from 2016–2022.

**Admitted that Article III, section 21, of the Florida Constitution provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice," and that District 16 in the Enacted Plan complies with this provision with respect to Benchmark Senate District 19 in the Senate plan in effect from 2016-2022.**

2. Admit that Article III, Section 21 of the Florida Constitution requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough County.

**Admitted that Article III, section 21, of the Florida Constitution provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice," and that District 16 in the Enacted Plan complies with this provision with respect to Benchmark Senate District 19 in the Senate plan in effect from 2016-2022. Denied that the Florida Constitution "requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough County."**

3. Admit that Article III, Section 21 of the Florida Constitution requires a Senate district in which Black voters have an ability to elect representatives of their choice in Pinellas County.

**Admitted that Article III, section 21, of the Florida Constitution provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice," and that District 16 in the Enacted Plan complies with this provision with respect to Benchmark Senate District 19 in the Senate plan in effect from 2016-2022. Denied that the Florida Constitution "requires a Senate district in which Black voters have an ability to elect representatives of their choice in Pinellas County."**

4. Admit that Article III, Section 21 of the Florida Constitution requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough and Pinellas Counties.

**Admitted that Article III, section 21, of the Florida Constitution provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice," and that District 16 in the Enacted Plan complies with this provision with respect to Benchmark Senate District 19 in the Senate plan in effect from 2016-2022. Denied that the Florida Constitution "requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough and Pinellas Counties."**

5. Admit that Article III, Section 21 of the Florida Constitution requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough or Pinellas Counties.

**Admitted that Article III, section 21, of the Florida Constitution provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect**

4

**representatives of their choice," and that District 16 in the Enacted Plan complies with this provision with respect to Benchmark Senate District 19 in the Senate plan in effect from 2016-2022. Denied that the Florida Constitution "requires a Senate district in which Black voters have an ability to elect representatives of their choice in Hillsborough or Pinellas Counties."**

6. Admit that, in the totality of the circumstances, the political processes leading to nomination or election for the Florida Senate are not equally open to participation by Black voters in Florida, in that they have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

**The Senate President objects to this request on the grounds that it is vague and calls for a legal conclusion rather than a fact or the application of law to a specific and identifiable set of factual circumstances.**

7. Admit that the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor a political party.

**Admitted.**

8. Admit that the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor an incumbent.

**Admitted.**

9. Admit that District 16 in the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor a political party.

**Admitted.**

10. Admit that District 16 in the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor an incumbent.

**Admitted.**

11. Admit that District 18 in the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor a political party.

**Admitted.**

12. Admit that District 18 in the 2022 enacted Senate Plan *was not* drawn with the intent to favor or disfavor an incumbent.

**Admitted.**

13. Admit that the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor a political party.

**Denied.**

14. Admit that the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor an incumbent.

**Denied.**

15. Admit that District 16 in the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor a political party.

**Denied.**

16. Admit that District 16 in the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor an incumbent.

**Denied.**

17. Admit that District 18 in the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor a political party.

**Denied.**

18. Admit that District 18 in the 2022 enacted Senate Plan *was* drawn with the intent to favor or disfavor an incumbent.

**Denied.**

  19. Admit that Tampa Bay is a geographical boundary.

**Admitted, to the extent that Tampa Bay is a significant water body of contiguous area hydrography feature of greater than ten acres.**

  20. Admit that Tampa Bay is a major geographical boundary.

**Admitted, to the extent that Tampa Bay is a significant water body of contiguous area hydrography feature of greater than ten acres.**

  21. Admit that the boundary between Pinellas and Hillsborough Counties is a political boundary.

**Admitted.**

  22. Admit that the boundary between Pinellas and Hillsborough Counties is a major political boundary.

**Admitted.**

  23. Admit that Tampa Bay is *not* a geographical boundary.

**Denied, to the extent that Tampa Bay is a significant water body of contiguous area hydrography feature of greater than ten acres.**

  24. Admit that Tampa Bay is *not* a major geographical boundary.

**Denied, to the extent that Tampa Bay is a significant water body of contiguous area hydrography feature of greater than ten acres.**

  25. Admit that the boundary between Pinellas and Hillsborough Counties is *not* a political boundary.

**Denied.**

26. Admit that the boundary between Pinellas and Hillsborough Counties is *not* a major political boundary.

**Denied.**

27. Admit that preserving the cores of pre-existing districts *was not* a criterion utilized in the drawing of the 2022 enacted Senate Plan.

**Admitted, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but denied to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

28. Admit that preserving the cores of pre-existing districts *was not* a criterion utilized in the drawing of District 16 in the 2022 enacted Senate Plan.

**Admitted, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but denied to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

29. Admit that preserving the cores of pre-existing districts *was not* a criterion utilized in the drawing of District 18 in the 2022 enacted Senate Plan.

**Admitted, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but denied to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

30. Admit that preserving the cores of pre-existing districts *was* a criterion utilized in the drawing of the 2022 enacted Senate Plan.

**Denied, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but admitted to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

31. Admit that preserving the cores of pre-existing districts *was* a criterion utilized in the drawing of District 16 in the 2022 enacted Senate Plan.

**Denied, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but admitted to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

32. Admit that preserving the cores of pre-existing districts *was* a criterion utilized in the drawing of District 18 in the 2022 enacted Senate Plan.

**Denied, to the extent that "preserving the cores of pre-existing districts" is not an explicit standard under Article III, section 21, of the Florida Constitution, but admitted to the extent the Florida Senate reasonably considered the historical configuration of pre-existing districts that have been litigated and/or upheld by the courts.**

33. Admit that, in the development of the 2022 enacted Senate Plan, the Florida Senate complied with Article I, Section 24 of the Florida Constitution; Article III, Section 4 of the Florida Constitution; and Chapter 286 of the Florida Statutes.

**Admitted that the Florida Senate complied with Article I, section 24, and Article III, section 4, of the Florida Constitution in the development of the 2022 enacted Senate Plan. Chapter 286 of the Florida Statutes contains 23**

**sections, many of which have no relevance to legislative functions, and to that extent the Florida Senate is unable to admit or deny this portion of the Request.**

34.   Admit that the Executive Office of the Governor was not involved in the drawing of the 2022 enacted Senate Plan.

**Admitted.**

35.   Admit that the Florida Department of State was not involved in the drawing of the 2022 enacted Senate Plan.

**Admitted, except to the extent that the Florida Department of State provided data that was integrated into the Florida Legislature's map drawing software.**

Dated: July 22, 2024

                         Respectfully submitted,

*/s/ Daniel Nordby*

| | |
|---|---|
| CARLOS REY (FBN 11648) | RICKY L. POLSTON (FBN 648906) |
| **FLORIDA SENATE** | DANIEL E. NORDBY (FBN 14588) |
| 404 South Monroe Street | ALYSSA L. CORY (FBN 118150) |
| Tallahassee, Florida 32399 | KASSANDRA S. REARDON (FBN 1033220) |
| (850) 487-5855 | **SHUTTS & BOWEN LLP** |
| *Rey.Carlos@flsenate.gov* | 215 South Monroe Street, Suite 804 |
| | Tallahassee, Florida 32301 |
| | (850) 241-1717 |
| | *RPolston@shutts.com* |
| | *DNordby@shutts.com* |
| | *ACory@shutts.com* |
| | *KReardon@shutts.com* |

*Counsel for Kathleen Passidomo,
in her official capacity as President of the Florida Senate*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I served this document by email on all counsel of record.

                                            */s/ Daniel Nordby*
                                            Attorney