UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KETO NORD HODGES, MEIKO SEYMOUR, JARVIS EL-AMIN, and JACQUELINE AZIS,

    Plaintiffs,

v.

BEN ALBRITTON and CORD BYRD,

    Defendants.

Case No: 8:24-cv-879-CEH-UAM

THREE-JUDGE COURT

## ORDER

This matter comes before the Court on Defendants' motions for summary judgment, and Plaintiffs' response in opposition to those motions. (Docs. 74 and 75).

Plaintiffs allege that the Florida Legislature racially gerrymandered Florida Senate District 16—which crosses the Tampa Bay, connecting Hillsborough and Pinellas Counties—and Florida Senate District 18, which is contained to Pinellas County. Defendants argue that we should grant summary judgment because no genuine dispute of material fact supports Plaintiffs' racial-gerrymandering claim. For the reasons stated below, we **GRANT** Defendants' motion for summary judgment as to District 18; we **DENY** their motion as to District 16; and we **DISMISS** Plaintiff Azis for lack of standing.

### I. Background

The Florida Senate deliberated about the state's redistricting and reapportionment process. (Doc. 79 at 2). In doing so, the Senate discussed compliance with the Florida Fair Districts Amendments, which requires the state legislature to consider race as part of the redistricting process. *See* Fla. Const. art. III, §§ 20(a), 21(a); (Doc. 79 at 2). The Senate enacted a plan that combines portions of Hillsborough and Pinellas Counties to form District 16. The plan results in District 18 bordering the Pinellas-County side of District 16.

Plaintiffs, three of whom reside in District 16 and one in District 18, challenge these Senate districts. (Doc. 1). Because District 16 crosses the Tampa Bay, without a connecting bridge, and the legislators made statements insinuating that race required the subordination of non-racial districting criteria, Plaintiffs argue that the Florida Senate racially gerrymandered District 16 and the neighboring District 18. They allege that the enacted plan "unjustifiably" packs black voters into District 16 that would otherwise be in District 18. (*Id.* at 5). That decision, in turn, reduces the "influence" of black voters in District 18. (*Id.*).

Plaintiffs sued Defendants—the President of Florida's Senate and Florida's Secretary of State—for racially gerrymandering Districts 16 and 18 in violation of the Equal Protection Clause. (*Id.* at 29). Plaintiffs rely on statements from legislators and their staff that discuss race, along with evidence of the districts' shapes and traditional redistricting criteria, to support their claims.

Defendants argue that no genuine dispute of material fact exists regarding Plaintiffs' racial-gerrymandering claims. They contend that four reasons compel summary judgment in their favor: first, Plaintiffs base their District 18 claim on District 16's facts, (Doc. 74 at 11); second, sovereign immunity bars Plaintiffs' claims, (*id.* at 14); third, the legislature used permissible criteria throughout the redistricting process, (*id.* at 17); and fourth, the state narrowly tailored its actions to a compelling interest, (Doc. 75 at 16).

## II.   Legal Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts "affect the outcome" of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute means that "a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether the moving party meets this standard, we make credibility determinations, weigh evidence, and draw inferences in the nonmoving party's favor because those tasks are "jury functions, not those of a judge." *Id.* at 255.

## III.   Discussion

The Fourteenth Amendment "prohibit[s] a State from engaging in a racial gerrymander unless it can satisfy strict scrutiny." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 7 (2024). Successful racial-gerrymandering claims require the challenger to show that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district."

3

*Miller v. Johnson*, 515 U.S. 900, 916 (1995). A plaintiff may support a racial-gerrymandering claim with direct evidence, which includes a state actor's race-related statements, or circumstantial evidence, which includes a district's shape and demographics. *See id.*

Although a state legislature cannot make race the "predominant factor" in its redistricting process without satisfying strict scrutiny, the federal Voting Rights Act and Florida law require awareness of race. *See* 52 U.S.C. § 10301; Fla. Const. art. III, §§ 20(a), 21(a). The Florida Constitution's Fair Districts Amendments set out two criteria—commonly referred to as "tier one" and "tier two"—that the legislature must follow during the redistricting process. Fla. Const. art. III, §§ 20(a), 21(a). Tier one requires that the legislature enact a map that allows racial minorities to "participate in the political process" and does not "diminish their ability to elect representatives of their choice." *Id.* §§ 20(a), 21(a). Practically, that non-diminishment provision instructs the State to consider racial minorities' ability to elect their candidate of choice—even in districts where the racial minority group does not comprise a majority of the population. Tier one also requires that "[d]istricts shall consist of contiguous territory." *Id.* Tier two provides additional criteria: "districts shall be as nearly equal in population as is practicable; districts shall be compact; and districts shall, where feasible, utilize existing political and geographical boundaries." *Id.* §§ 20(b), 21(b). The legislature must comply with tier two unless its criteria conflicts with tier one or federal law. *Id.*

With these requirements in mind, we recognize that "[r]edistricting constitutes a traditional domain of state legislative authority." *Alexander*, 602 U.S. at 7. Because the redistricting process requires the state to balance complex and competing criteria, we "presum[e] that the legislature acted in good faith." *Id.* at 6.

### A.

We begin with District 16. Defendants argue that the "undisputed facts establish that the [l]egislature used permissible reapportionment criteria not overridden by race." (Doc. 74 at 17). We disagree. District 16 presents "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

To start, Plaintiffs provide direct evidence of "a relevant state actor's express acknowledgement that race played a role in the drawing of district lines." *Alexander*, 602 U.S. at 8. One state legislator explained the map-drawing process on the Senate floor: "So once we've identified the Tier One districts, we then start with a blank map, highlight the data we've received from the U.S. Census Bureau by race, and then the staff began drawing around the population distribution in order to ensure we had not diminished the opportunity for minorities to participate or elect a [candidate] of their choice." (Doc. 80-10 at 23). He further explained that they "highlighted the racial population" and "began drawing from there." (*Id.* at 24). Although Defendants direct us to the map drawer's testimony that contradicts this legislator's statement (Doc. 74-15 at 12), we believe that the credibility of the map drawer's testimony is an issue for trial. *See Anderson*, 477 U.S. at 255.

5

Plaintiffs bolster the general statements of Florida's redistricting process with evidence "specific" to District 16. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015). One legislator pointed out that "crossing the Bay" did not "seem necessary." (Doc. 80-5 at 31). That legislator asked the map drawer about compliance with tier one without crossing the Tampa Bay, and the map drawer responded that he was "not sure" whether tier one required crossing the Bay and had not "reviewed the statistics for that." (*Id.* at 32). But the map drawer cited race as the reason he never analyzed a map of District 16 contained to Hillsborough County—"[b]ecause [he] believe[d] that doing so would have raised questions about what would happen and whether or not the population that was in Pinellas and St. Pete had their opportunity diminished." (Doc. 75-2 at 97). Viewing these statements in Plaintiffs' favor, the record supports their position that "[r]ace was the criterion that, in [Florida's] view, could not be compromised." *Shaw v. Hunt*, 517 U.S. 899, 907 (1996).

Circumstantial evidence supports Plaintiffs' claim, too. "[E]vidence of a district's shape and demographics" may demonstrate that race predominated in the legislature's enacted plan. *See Miller*, 515 U.S. at 916. Plaintiffs' claim, in part, relies on the shape of District 16: the district crosses the Tampa Bay, and no bridge connects the two segments. One Defendant stated that the "Tampa Bay is a *significant* water body of contiguous area" that is a "hydrography feature of greater than ten acres." (Doc. 80-11 at 7 (emphasis added)). The split-county shape also contradicts the Senate's own directive to "keep cities whole." (Doc. 74-3 at 3). And that choice runs counter to "race-neutral districting principles," which include "respect for political

6

subdivisions or communities defined by actual shared interests." *See Miller*, 515 U.S. at 916. Defendant admitted that the boundary between Hillsborough and Pinellas Counties is a "major political boundary." (Doc. 80-11 at 7). Together, the direct and circumstantial evidence that race predominated in drawing District 16 requires this Court to weigh evidence and make credibility determinations: a task properly left for trial. *See Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024).

Defendant Ben Albritton argues in a supplemental filing that his position finds support in a recent district court order: *Cubanos Pa'lante v. Florida House of Representatives*, 2025 WL 500904 at *8–9, No. 24-cv-21983-JB (S.D. Fla. Feb. 13, 2025). Specifically, Defendant quotes two observations from the district court's ruling on a motion to dismiss: "allegations are too generalized to support the inference that race motivated the Florida Legislature's redistricting efforts" and "factual allegations founded on describing the minutiae of a district's boundaries without connecting those boundaries' shapes to the impermissible use of race cannot survive a motion to dismiss." *Id.* at *8, 9.

We disagree that the reasoning in *Cubanos Pa'lante* supports summary judgment here. The *Cubanos Pa'lante* challengers alleged that the Florida Legislature racially gerrymandered three congressional districts and seven state house districts. *Id.* at *1. The district court granted the motion to dismiss for two of the congressional districts but denied the motion on all other claims. *Id.* at *9. When addressing the "generalized" statements, the district court observed that a statement applying to all districts "does not, *by itself*, plausibly suggest that race was the predominant" factor in any particular

7

district. *Id.* at *5 (emphasis added). Put another way, a challenger must provide more than generalized statements to support its claim that race predominated in the drawing of a particular district. The challengers, there, also relied on the legislature's deliberations about the Florida Senate districts to support their argument that congressional districts were racially gerrymandered. The court considered that evidence "less persuasive" because those statements concerned an unchallenged electoral district. *See id.* at *7. Here, Plaintiffs do not rely on general statements that apply to all districts, by themselves, to prove racial predominance. Instead, they have supplemented these statements with specific statements about District 16. And, unlike in *Cubanos Pa'lante*, Plaintiffs buttress that direct evidence with circumstantial evidence, such as the district's shape and inconsistencies with traditional redistricting principles.

Defendants make two other arguments relevant to District 16, but neither argument is successful.

First, Defendants argue that sovereign immunity bars Plaintiffs' claims because they are, effectively, bringing a state law claim against state actors. We disagree. Sovereign immunity applies to "claim[s] of entitlement to relief . . . based on a violation of state law." *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1204 (11th Cir. 2019). Here, Plaintiffs base their claim on the federal Equal Protection Clause, arguing that the district lines are racially gerrymandered in violation of their Fourteenth Amendment rights. Although Plaintiffs rely on legislators' discussions about compliance with state law to demonstrate racial predominance, that reliance

8

does not transform their Fourteenth Amendment claim into a claim for violation of state law. Plaintiffs' Fourteenth Amendment claim does not require them to establish a violation of state law; a district may violate federal law even though it complies with state law and vice versa.

 Second, Defendant Cord Byrd argues that, even if race predominated, the state narrowly tailored the district to a compelling interest—compliance with the Florida Fair Districts Amendments. "To satisfy strict scrutiny, the State must demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest." *Miller*, 515 U.S. at 920. But Defendant Byrd does not argue that compliance with the Florida Fair Districts Amendments is, in fact, a compelling interest. Instead, he argues that we should *assume* that compliance with the Florida Fair Districts Amendments serves as a compelling interest and uphold the constitutionality of the district based on that assumption. We disagree that Defendant Byrd may meet his burden by way of a judicial assumption. Although the Supreme Court has made a similar assumption that compliance with the federal Voting Rights Act is a compelling interest, the Court held in those cases that the states' districts *failed* on the narrowly tailoring requirement. *See, e.g.*, *Shaw*, 517 U.S. at 918; *Cooper v. Harris*, 581 U.S. 285, 292, 323 (2017); *Bush v. Vera*, 517 U.S. 952, 979 (1996). That is, the Court assumed a compelling interest, but held that, even with that assumption, the districts were unconstitutional. The parties have pointed us to no precedent where the Supreme Court has assumed a compelling interest and then held that a state action is constitutional based merely on that assumption.

*B.*

We turn now to District 18 where Plaintiff Azis resides. Unlike Plaintiffs' District 16 claim, nothing in the record suggests that race predominated in the legislature's drawing of District 18. Racial-gerrymandering claims require proof that the state improperly drew a "specific electoral district[]." *See Ala. Legis. Black Caucus,* 575 U.S. at 263. The upshot is that Plaintiffs must establish "that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a *particular district*." *Miller*, 515 U.S. at 916 (emphasis added). But there is no record evidence that the legislature had any specific racial composition in mind for District 18, much less that race was "the predominant factor motivating the legislature's decision to place a significant number of voters" in District 18. *Miller*, 515 U.S. at 916.

Plaintiffs say that the border between District 18 and District 16 was affected by the legislature's race-based goal for District 16, (Doc. 1 at 5, 20), and there is evidence of that fact. (Doc. 80-5 at 12–13). But the Supreme Court has rejected claims based on the idea that a racial gerrymander of one district affected the lines of a neighboring district. *See United States v. Hays*, 515 U.S. 737, 745–46 (1995); *Sinkfield v. Kelley*, 531 U.S. 28, 30–31 (2000). In *Hays*, the Court explained that evidence sufficient to support a racial gerrymandering claim with respect to one district "does not prove anything about the legislature's intentions with respect to [a neighboring district]." 515 U.S. at 746. *See also Sinkfield*, 531 U.S. at 30–31 ("[A]n unconstitutional use of race in drawing the boundaries of majority-minority districts [does not] necessarily involve[] an

10

unconstitutional use of race in drawing the boundaries of neighboring majority-white districts."). Even if Plaintiffs are correct "that the racial composition of [District 18] would have been different if the legislature had drawn [District 16] in another way," that "effect does not allege a cognizable injury under the Fourteenth Amendment" because that effect does not "reflect that the legislature intended [District 18] to have any particular racial composition." *Hays*, 515 U.S. at 746.

In short, Plaintiffs provide neither direct nor circumstantial evidence of race-based intentions to support their racial-gerrymandering claim as to District 18. As such, no genuine dispute of material fact exists to support their claim that the legislature racially gerrymandered that district, so we grant summary judgment in Defendants' favor for this claim.

Relatedly, because Plaintiff Azis lacks standing to challenge any district other than District 18 where she resides, the Court dismisses her from this case.

### IV. Conclusion

The Court **DENIES** Defendants' motion for summary judgment as to the District 16 claim but **GRANTS** their motion as to the District 18 claim. The Court **DISMISSES** Plaintiff Azis as a party.

DONE and ORDERED this 31st day of March, 2025.

_____
ANDREW L. BRASHER
UNITED STATES CIRCUIT JUDGE

_____
THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE

_____
Charlene Edwards Honeywell
United States District Judge