## REBUTTAL REPORT OF MATTHEW BARRETO, Ph.D.

**I.      Introduction**

1.  I, Matthew A. Barreto, am over 18 years of age and am competent to testify.

2.  I am a Professor of Political Science and Chicana/o Studies at the University of California, Los Angeles ("UCLA").   I was appointed to the position of Full Professor with tenure at UCLA in 2015.  Prior to that, I was a tenured Full Professor of Political Science at the University of Washington ("UW"), and before that, tenured Associate Professor from 2009 to 2014 and started as Assistant Professor from 2005 to 2009 at UW. At UCLA, I am the faculty director of the Voting Rights Project in the Luskin School of Public Affairs and teach a year-long course on the Voting Rights Act ("VRA"), focusing specifically on social science statistical analysis, demographics, and district mapping analysis that are relevant in redistricting expert reports.  I have written expert reports and been qualified as an expert witness more than three-dozen times in federal and state voting rights and civil rights cases, including multiple times in the state of Florida.  I have published peer-reviewed, social science articles specifically about minority representation, voting patterns and racially polarized voting and have co-authored a software package for use in understanding district performance and racial voting patterns in redistricting cases.

3.  On July 2, 2024 I submitted an expert report in this matter of *Nord Hodges v. Passidomo*. My curriculum vitae is attached to Appendix B to that initial report. My compensation remains the same as indicated in paragraph 5 of that initial report.

4.  I have now read the report by Dr. Dennis G. Stephen Voss, Jr. and below I outline my response.

**II.      Response to Dr. Dennis G. Stephen Voss**

5.  Dr. Voss and I both agree that Black voters in the Tampa region of Florida are politically cohesive, and we also agree that non-Blacks are voting *against* Black voters' candidates of choice.  Dr. Voss attempts to muddy the waters with false methodological statements, but the data speak for themselves.  In Table 5 on page 19 of the Voss report his own analysis, which does not appear to be at the VTD or precinct level, still comes to the same conclusion as my original report, or a high degree of Black cohesion and that White voters do not support the Black candidate of choice.  Regardless of what method, what unit of aggregation, or what type of race data is used, Dr. Voss's Table 5 supports the exact same conclusion.  Black voters demonstrate very high support for Gillum in 2018 and that White voters gave Gillum very low support and instead gave their strongest support to their different preferred candidate, Graham.  That the data all conclude in the same direction indicates the unsoundness of Dr. Voss's methodological critiques raised by Dr. Voss are. Indeed, if his analysis reveals anything, it is that no matter what method or data used, there is strong evidence of racially polarized voting between Black and non-Black voters in the Tampa region.

6.  To be certain, Dr. Voss concludes his report by stating that he agrees with my conclusion that racially polarized voting exists, on page 22, paragraph D:

    a.  *we still agree in broad brushstrokes that (1) Black voters engaged in clear racial-bloc voting in three primaries featuring an African-American candidate, with a supermajority backing the Black candidate, and (2) although White and Hispanic voters showed less racial cohesiveness, they did side against the Black candidate of choice in two of three contests. No one denies racial/ethnic identity still shapes voting behavior in Florida*

Barreto Rebuttal, pg2

7. Dr. Voss is incorrect in his claim that my use ecological inference ignores contextual patterns in political behavior.  But he does not provide any evidence to support this claim, nor does he demonstrate how it impacted the results of Black and non-Black voters. Indeed, his replication of the ecological inference arrives at the exact same conclusion as me, indicates that his criticism makes no difference to the conclusion that Black voters are cohesive and non-Black voters vote against the Black preferred candidate.

5. Dr. Voss is wrong that I used Census blocks as my unit of aggregation.  I used VTDs as explained on page 6, paragraph 14 of my original report:

   a.  *I used ArcGIS redistricting application developed by Esri (https://www.esri.com/en-us/arcgis/about-arcgis/overview) and imported block-level 2020 Decennial Census redistricting data (P.L. 94-171) as reported by the U.S. Census Bureau to depict population concentrations by race and ethnicity and matched to the voting precinct (VTD).*

8. Throughout my report I provide results for two court-accepted methods of ecological inference, iterative EI and EI RxC.  In his report, Dr. Voss rarely critiques, or even mentions the EI RxC results, instead attempting to identify shortcoming of iterative EI. First, his critiques of iterative EI are not based in any statistical analysis, instead they are assertions with no evidence.  He never presents the court with any evidence that the methodology employed in my analysis is wrong, or not consistent with published social science practices. Indeed, in published peer-reviewed social science research[1], and in

---

[1] See e.g. Decter-Frain, A, P Sachdeva, L Collingwood, H Murayama, J Burke, MA Barreto, S Henderson, S Wood, J Zingher. 2023. "Comparing Methods for Estimating Demographics in Racially Polarized Voting Analyses" *Sociological Methods & Research; Barreto, Matt, Loren Collingwood, Sergio Garcia-Rios and Kassra Oskooii. 2019. "Estimating Candidate Support: Comparing Iterative EI and EI-RxC Methods" Sociological Methods and Research. 48(4).; Collingwood, Loren, Kassra Oskooii, Sergio Garcia-Rios, and Matt Barreto. 2016. "eiCompare: Comparing Ecological Inference Estimates across EI and EI: RxC." The R Journal. 8:2*

Barreto Rebuttal, pg3

numerous federal court decisions[2], iterative EI has been found to be accurate, as used in my expert report in this matter.

9. To further prove that the patterns of racially polarized voting are strong and consistent, regardless of the unit of aggregation or the type of race data employed, I have now fully replicated the analysis in my original report using race of turned out voters in the 2014 and 2018 elections, sourced from the Florida Legislature's redistricting data[3]. I then merged precinct names for Hillsborough and Pinellas counties using Block identifiers with the Florida redistricting dataset from my previous analysis. Finally, I aggregated the election and demographic data used in my RPV analysis from blocks to precincts (instead of VTDs) to conduct both iterative EI and EI RxC analyses. These additional results can be found in Appendix A and are broken out for Hillsborough County only, as well as Hillsborough and Pinellas Counties combined.

10. The results for both iterative EI and EI RxC using race of turned out voters and precinct as the unit of analysis continue to show clear evidence of racially polarized voting. They

---

[2] Federal Courts have allowed expert witnesses to present ecological inference ("EI") analysis and accepted the use of EI analysis to determine whether minority voters vote cohesively. See Luna v. Cnty. of Kern, 291 F. Supp. 3d 1088, 1117 (E.D. Cal. 2018); United State v. City of Euclid, 580 F. Supp. 2d 584, 594 (N.D. Ohio 2008); Singleton v. Merrill, 582 F. Supp. 3d 924, 1017 (N.D. Ala. 2022); Soto Palmer v. Hobbs, 686 F. Supp. 3d 1213, 1225 (W.D. Wash. 2023), cert. denied before judgment sub nom. Trevino v. Palmer, 144 S. Ct. 873, 218 L. Ed. 2d 58 (2024); Bone Shirt v. Hazeltine, 336 F. Supp. 2d 976, 995,1001-04 (D.S.D. 2004) (collecting cases). Indeed, "[c]ourts have recognized ecological inference ("EI") as an appropriate analysis for determining whether a plaintiff has satisfied the second and third Gingles preconditions. See, e.g., Rose v. Raffensperger, 584 F. Supp. 3d 1278, 1294 (N.D. Ga. 2022); Patino v. City of Pasadena, 230 F. Supp. 3d 667, 691 (S.D. Tex. 2017); Benavidez v. City of Irving, 638 F. Supp. 2d 709, 723–24 (N.D. Tex. 2009)." Alpha Phi Alpha Fraternity Inc. v. Raffensperger, 700 F. Supp. 3d 1136, 1264 (N.D. Ga. 2023). Other courts have recognized that "King's EI is 'the gold standard for experts in this field doing a racially-polarized voting analysis.'" Alpha Phi Alpha Fraternity Inc. v. Raffensperger, 587 F. Supp. 3d 1222, 1311 (N.D. Ga. 2022).See also Petteway v. Galveston Cty., 698 F. Supp. 3d 952 (S.D. Tex. 2023); Baltimore County NAACP v. Baltimore County 21-cv-03232-LKG (2022); Clerveaux et al. vs. East Ramapo CSD 17-cv-8943(CS) (2020)

[3] I relied on the available general election results disaggregated to 2020 Census Blocks found here: https://www.floridaredistricting.gov/pages/resources and https://redistrictingdatahub.org/state/florida/

demonstrate that Black voters are politically cohesive, and that non-Black voters

regularly bloc vote against Black candidates of choice.

11. Elsewhere Dr. Voss notes that "Barreto does not use this sophisticated method vote

estimation in his performance analysis. Rather, for the performance analysis, he simply

appears to be adding up past voting returns." Indeed, Dr. Voss has read my report

correctly, and he has explained the most accurate and court-approved way to do

performance analysis, that is, by taking the actual vote returns that each candidate

received in every precinct and aggregating them to determine who won or lost. When

voting returns are available within precinct boundaries that coincide with existing and

illustrative district boundaries, this is the most accurate way to conduct performance

analysis and has been recognized by state and federal courts for decades.

12. I declare under penalty of perjury that the foregoing is true and correct according to the

best of my knowledge, information, and belief.


_____

Matthew A. Barreto

Agoura Hills, CA

October 9, 2024

**Barreto Rebuttal – Appendix A**









Appendix, pg1

**Barreto Rebuttal - Appendix A**
Page 3 of 3









Appendix, pg2