IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, *et al.*,

   *Plaintiffs*,

v.                                                 Case No. 8:24-cv-879

BEN ALBRITTON, *etc.*, *et al.*,

   *Defendants*.

_____/

**FINAL PRETRIAL STATEMENT**

Plaintiffs Kéto Nord Hodges, Jarvis El-Amin, and Meiko Seymour, and Defendants Florida Senate President Ben Albritton and Secretary of State Cord Byrd, jointly submit this final pretrial statement pursuant to this Court's Case Management and Scheduling Order (ECF No. 37) and Local Rule 3.06(b).

**(1) The basis for the court's jurisdiction.**

This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

**(2) A concise statement of the action.**

Plaintiffs assert one claim under 42 U.S.C. § 1983 alleging that Florida Senate District 16 is racially gerrymandered in violation of the Equal Protection Clause of the U.S. Constitution.

**(3) A concise statement of each party's position.**

<u>Plaintiffs</u>: Senate District 16 was drawn predominantly based on racial considerations. The use of race in drawing District 16 was not narrowly tailored to any compelling state interest. Plaintiffs request a declaratory judgment that District 16 is an unconstitutional racial gerrymander in violation of the Equal Protection Clause; a permanent injunction enjoining elections under it; and a remedial decree that ensures Plaintiffs live and vote in constitutional districts beginning with the 2026 elections or, if adequate relief is unavailable before then, in a special election. Plaintiffs also request reasonable attorneys' fees and costs.

<u>Senate</u>: Plaintiffs' Equal Protection claim fails because Senate District 16 is not a racial gerrymander. Racial considerations did not predominate over the traditional redistricting factors required by the Florida Constitution, such as population equality, contiguity, compactness, and use of existing political and geographical boundaries. District 16's design not only satisfies all of these criteria, it also maintains the general district configuration from the court-ordered benchmark district, which joined portions of Hillsborough and Pinellas Counties in a Florida Senate district. Finally, District 16 was not drawn with the intent to favor or disfavor any political party or incumbent. Although District 16 also complies with the Florida Constitution's requirement that legislative districts not "diminish" the ability of racial or language minorities to elect representatives of their choice, mere *consciousness* of race does not constitute racial predominance.

Even if Plaintiffs could establish racial predominance, their Equal Protection

2

claim would fail as to narrow tailoring. Plaintiffs have not put at issue whether compliance with the Florida Constitution constitutes a compelling interest—indeed, they have affirmatively disavowed such a claim. The Florida Senate is entitled to a presumption of legislative good faith and to "breathing room" to adopt "reasonable compliance measures that may prove, in perfect hindsight, not to have been needed." The legislative record reflects that the Florida Senate had "good reasons" and a "strong basis in evidence" for adopting District 16's configuration, which alone is sufficient to defeat Plaintiffs' Equal Protection claim.

The Court should deny Plaintiffs' claims in their entirety, render judgment for the Defendants, and enter an order taxing prevailing party fees and costs against Plaintiffs.

Secretary: The race-based provisions of Florida's Fair Districts Amendments do not serve a compelling state interest. Therefore, if race predominated in the drawing of Senate District 16, the legislature cannot draw and Plaintiffs cannot seek any remedial map that includes a black-performing district in the Tampa-St. Petersburg-Clearwater Metropolitan Statistical Area.

**(4) A list of each exhibit with a notation of each objection.**

The Parties' exhibit lists are attached as **Attachments A** and **B** and the Joint exhibit list as **Attachment C**.

**(5) A list of each witness by name.**[1]

| Plaintiffs' Witnesses | | |
|---|---|---|
| Name | Likelihood of Testifying | Objections |
| Jay Ferrin | Will call | None |
| Kéto Nord Hodges | Will call | None |
| Jarvis El-Amin | Will call | None |
| Meiko Seymour | Will call | None |
| Jaqueline Azis | Will call | See Motion in Limine, Relevance |
| Yvette Lewis | Will call | Relevance |
| Nicholas Warren | May call | None |
| Daryl Rouson | May call | None |
| Randolph Bracy | May call | None |
| Fentrice Driskell | May call | Relevance |
| Mary Ellen Klas | May call | None |
| Jacob Ogles | May call | Relevance |
| Oscar Braynon | May call | Relevance |
| Defendants' Witnesses | | |
| Name | Likelihood of Testifying | Objections |
| Jay Ferrin | Will call | None |
| Nicholas Warren | Will call | None |
| Matthew Isbell | Will call | Relevance |
| Mary Ellen Klas | May call | None |
| Craig Latimer | May call | None |
| Julie Marcus | May call | None |

**(6) A list of each expert witness.**

| Plaintiffs' Expert Witnesses | | |
|---|---|---|
| Name | Substance of Testimony | Objections |
| Dr. Matthew Barreto | The ability of Black voters to elect representatives of their choice in alternative configurations of District 16; whether race explains the shapes and borders of the Challenged Districts; and other subjects in his reports. | See Motion in Limine |
| Dr. Cory McCartan | Alternative plans; attributes and | None |

---

[1] Each side reserves the right to call and cross-examine any witnesses listed on the other side's witness list and any other witnesses necessary for rebuttal or impeachment purposes.

4

| | characteristics of alternative plans; comparisons between alternative plans and other plans; and other subjects in his report. | |
|---|---|---|
| **Defendants' Expert Witnesses** | | |
| **Name** | **Substance of Testimony** | **Objections** |
| Mary Adkins (Secretary) | The history of the 2010 redistricting amendments to the Florida Constitution, including contemporaneous statements concerning the amendments, and a comparison of the amendments and the 1964 Voting Rights Act. | None |
| Sean Trende | His expert assessment of Dr. McCartan's demonstration Districts A, B, and C, and any predecessor districts in place under the Benchmark Map, and assessment of Senate Districts 14, 16, 18, 20, 21, and 23. | None |
| Stephen D. Voss | His use of ecological-inference software to provide expert analysis of Dr. Barreto's expert opinion in the litigation, as well as Dr. McCartan's demonstration Districts A, B, and C, as compared to the Enacted and Benchmark Maps. | None |

**(7) A breakdown of the type and amount of monetary damages.**

No party asserts a claim for monetary damages.

**(8) A list of each deposition offered in lieu of live testimony.**

1. Maria Matthews. Testimony the parties agree to publish: 7:1–4, 11:3–8, 32:11–34:6, 38:17–41:23, 50:22–52:4, 56:11–57:18.

**(9) A concise statement of each admitted fact.**

1. Defendant Ben Albritton is the current President of the Florida Senate.

5

2. Defendant Cord Byrd is the current Florida Secretary of State and, in that capacity, is the agency head of the Florida Department of State. The Department of State has "general supervision and administration of the election laws," including the Enacted Plan, administers Senate candidate qualifying, receives Senate election returns from the county canvassing boards, and issues certificates of election to successful Senate candidates.

3. Before and during the 2022 Regular Session, the Florida Senate held committee meetings to conduct the redistricting and reapportionment process. Specifically, Senate redistricting proceeded through seven committee and subcommittee meetings.

4. Throughout the redistricting process, legislators, their attorneys, and their staff used the terms "Tier One" and "Tier Two" as a shorthand to refer to the requirements contained within the Florida Constitution, Article III, Section 21(a) and (b), respectively.

5. The Florida Senate Committee on Reapportionment met on September 20, 2021; October 11, 2021; October 18, 2021; and January 13, 2022.

6. On September 20, 2021, and October 11, 2021, the Committee on Reapportionment received informational briefings on the census data and legal requirements governing redistricting.

7. On October 18, 2021, the Committee on Reapportionment unanimously adopted a series of directives establishing priorities and standards that would govern the drawing of senate district maps by legislative staff.

6

8. The Select Subcommittee on Legislative Reapportionment met on the following dates to workshop and comment on staff-drawn maps: November 17, 2021; November 29, 2021; and January 10, 2022.

9. The Select Subcommittee on Legislative Reapportionment convened on November 17, 2021, to workshop four draft plans (8010, 8012, 8014, and 8016).

10. The Select Subcommittee on Legislative Reapportionment convened on November 29, 2021, to workshop four new maps (8026, 8028, 8030, and 8034).

11. The Select Subcommittee on Legislative Reapportionment convened for the final time on January 10, 2022, when it recommended advancing two plans, including one that would become Plan S027S8058, to the full Committee.

12. On January 13, 2022, the Reapportionment Committee considered what became Plan S027S8058 (after district renumbering) and favorably reported SJR 100 (including Plan S027S8058) by a 10-2 vote.

13. On January 20, 2022, the full Senate passed SJR 100 (including Plan S027S8058) by a 34-3 vote.

14. On February 2, 2022, the Florida House passed SJR 100 (including Plan S027S8058) by a 77-39 vote.

15. On February 3, 2022, the Florida Legislature passed CS/SJR 100, adopting Plan S027S8058 ("Enacted Plan"). Senators are currently elected from the Enacted Plan.

16. Plaintiffs' Illustrative Plans A, B, and C were created by Plaintiffs' expert, Dr. McCartan.

**(10) A concise statement of each agreed principle of law.**

1. Challenges to the constitutionality of state legislative districts are heard by three-judge district courts. *See* 28 U.S.C. § 2284(a).

2. The Court has jurisdiction over the Parties and this action.

3. Venue properly rests with this Court.

4. Racial gerrymandering claims involve "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017).

5. *First*, plaintiffs must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," and "that the legislature subordinated traditional race-neutral districting principles . . . to racial considerations," *Bethune-Hill I*, 580 U.S. at 187 (quoting *Miller*, 515 U.S. at 916).

6. To meet their burden of proof, plaintiffs may rely on "'direct evidence' of legislative intent, 'circumstantial evidence of a district's shape and demographics,' or a mix of both." *Cooper*, 581 U.S. at 291 (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)).

7. *Second*, "if racial considerations predominated over others, the design of the district must withstand strict scrutiny. The burden shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper*, 581 U.S. at 292.

8. "[T]o meet the 'narrow tailoring' requirement," the State must prove it "had 'a strong basis in evidence' for concluding that the [Non-Diminishment

Provision] required its action." *Id.* (citation omitted). This requires a "functional analysis of the electoral behavior within the particular . . . district," *Bethune-Hill I*, 580 U.S. at 194, and the record must support "a strong showing of a pre-enactment analysis with justifiable conclusions." *Abbott v. Perez*, 138 S. Ct. 2305, 2335 (2018).

9.   "To establish a laches defense, '[t]he defendant must show a delay in asserting a right or claim, that the delay was not excusable and that there was undue prejudice to the party against whom the claim is asserted.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Ecology Ctr. of La., Inc. v. Coleman*, 515 F.2d 860, 867 (5th Cir. 1975)).

**(11) A concise statement of each issue of fact.[2]**

1.   Whether "race was the predominant factor in the design of" District 16. *Abbott v. Perez*, 585 U.S. 579, 620 (2018).

2.   Whether Plaintiffs delayed in asserting their claims.

**(12) A concise statement of each issue of law.**

1. Whether, if the Court finds that race was the predominant factor in the design of District 16, the use of race in the design of District 16 was narrowly tailored to compliance with the non-diminishment requirement of Fla. Const. art. III, § 21(a).

2. Whether any delay in Plaintiffs' asserting their claims was inexcusable.

---

[2] If any of these Issues of Fact is more appropriately described as an Issue of Law, it is incorporated in Section 12 below.

3. Whether the Senate was unduly prejudiced as a result of any such inexcusable delay.

4. The Secretary raises an issue of law: whether compliance with the Fair Districts Amendments serves a compelling governmental interest. Plaintiffs disagree that this is an issue in this case.

5. The Secretary raises an issue of law: whether a remedial plan, if one is required at the end of trial, satisfies the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs disagree that this is an issue in this case.

**(13) A list of each pending motion or other unresolved issue.**

1. Secretary's Motion for Reconsideration of Summary Judgment (ECF No. 96)

2. Defendants' Motion in Limine Regarding Dr. Barreto

3. Defendants' Motion in Limine to Exclude or Limit the Testimony of Jacqueline Azis

4. Plaintiffs' Motion for Non-Sequestration

5. The parties request that the Court take judicial notice of any Florida Channel video recording of the Florida Legislature's during the 2022 redistricting cycle. The parties may submit recording excerpts, stored on a flash drive, to the Court during and after trial.

**(14) A statement of the usefulness of further settlement discussions.**

The Parties agree that further settlement discussions would not be useful.

**(15) The signatures of trial counsel and certification.**

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Respectfully submitted,

*/s/ Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org
cmcnamara@aclufl.org

James Michael Shaw, Jr. (FBN 677851)
Naomi Robertson (FBN 1032076)
**Butler Weihmuller Katz Craig LLP**
400 North Ashley Drive, Suite 2300
Tampa, FL 3360
Tampa, FL 33602
(813) 281-1900
jshaw@butler.legal
nrobertson@butler.legal

Deborah N. Archer*
David Chen*
**Civil Rights & Racial Justice Clinic**
**Washington Square Legal Services, Inc.**
245 Sullivan Street
New York, NY 10012
(212) 998-6473
deborah.archer@nyu.edu
davidchen@nyu.edu
* *Special admission*

*Counsel for Plaintiffs*

/s/ Michael Beato
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe Street, Suite 500
Tallahassee, Florida 32301
(850) 270-5938

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399
(850) 245-6536

*Counsel for the Secretary*

/s/ Daniel E. Nordby
RICKY L. POLSTON (FBN 648906)
DANIEL E. NORDBY (FBN 14588)
DENISE M. HARLE (FBN 81977)
TARA R. PRICE (FBN 98073)
ALYSSA L. CORY (FBN 118150)
KASSANDRA S. REARDON (FBN 1033220)
**SHUTTS & BOWEN LLP**
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717
*RPolston@shutts.com*
*DNordby@shutts.com*
*DHarle@shutts.com*
*TPrice@shutts.com*
*ACory@shutts.com*
*KReardon@shutts.com*

CARLOS REY (FBN 11648)
**FLORIDA SENATE**
404 South Monroe Street
Tallahassee, Florida 32399
(850) 487-5855
*Rey.Carlos@flsenate.gov*

*Counsel for Florida Senate President Ben Albritton, in his official capacity*

1