UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KETO NORD HODGES, MEIKO SEYMOUR, JARVIS EL-AMIN, JENNIFER GARCIA, and JACQUELINE AZIS,

    Plaintiffs,

v.

KATHLEEN PASSIDOMO and CORD BYRD,

    Defendants.

Case No: 8:24-cv-879-CEH-UAM

THREE-JUDGE COURT

## ORDER

This matter comes before the Court on Secretary Ben Albritton's motion for reconsideration of this Court's summary judgment order. (Docs. 95 and 96). We grant it in part and deny it in part.

We grant the motion to the extent that we recognize Secretary Albritton is correct that, in *Bethune-Hill v. Virginia State Board of Elections*, the Supreme Court assumed that compliance with Section 5 of the Voting Rights Act was a compelling interest to affirm a district court's judgment that a state district was constitutional. 580 U.S. 178, 194, 196 (2017). *But see id.* at 804 (Thomas, J., dissenting) ("I know of no other case, in any context, in which the Court has assumed away part of the State's burden to justify its intentional use of race."). Decades before *Bethune-Hill*, the Court

held that Section 5 was an appropriate remedy for previous racial discrimination. *See South Carolina v. Katzenbach*, 383 U.S. 301, 337 (1966). And, by the time of *Bethune-Hill*, eight Justices had previously stated their conclusion that compliance with Section 5 was a compelling interest. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 475 n.12 (2006) (Stevens and Breyer, JJ., concurring); *id.* at 485 n.2 (Souter and Ginsberg, JJ., concurring); *id.* at 518 (Scalia, J., concurring, joined by Roberts, C.J., and Thomas and Alito, JJ.). In *Bethune-Hill*, the Court assumed it was a compelling interest because the district court had "held that compliance with § 5 was a compelling state interest" and no party had challenged the district court's holding on appeal. 580 U.S. at 186, 193.

We deny the Secretary's motion in all other respects and decline to rule at the summary judgment stage based on an assumption that compliance with the Fair Districts Amendments is a compelling interest. This case is different from *Bethune-Hill* for at least three reasons.

First, neither party has explained—even as a matter of theory—how compliance with the Fair Districts Amendments *could* be a compelling interest that justifies a race-predominant redistricting plan under federal law. Unlike the state officers in *Bethune-Hill*, which affirmatively argued that compliance with Section 5 was a compelling interest, *see* Brief for Appellees at 51, *Bethune-Hill*, 580 U.S. 178 (No. 15-680), 2016 WL 6123732 at *51, the Secretary takes no position on that question. Instead of providing any justification for the assumption he asks us to make, the Secretary merely

2

points us to the fact that the Plaintiffs "don't dispute that complying with the non-diminishment provision is a compelling governmental interest." (Doc. 96 at 3). But it is the Secretary's burden to meet strict scrutiny—both because the Secretary is the movant at summary judgment and because the Secretary has the burden on this issue as a matter of constitutional law. *See Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 11 (2024).

Second, unlike the Voting Rights Act addressed in *Bethune-Hill*, the degree to which the Fair Districts Amendments provide a justification for race-based redistricting is actively being litigated. The Florida Supreme Court has not yet adjudicated the dispute. *See Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't. of State*, No. SC2023-1671, 2024 WL 370045 (Fla. argued Sept. 12, 2024). But Chief Judge Osterhaus, in addressing the arguments in that case, has explained that drawing a "district to ensure wins for the preferred candidate of black voters, as required by the Fair Districts Amendment's (FDA) diminishment clause, Art. III, § 20, Fla. Const., is only permissible under federal equal protection principles if current evidence validates the need for a strong-medicine remedy to combat pervasive and purposeful discrimination." *Sec'y of State Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, 375 So. 3d 335, 356 (Fla. Dist. Ct. App. 2023) (Osterhaus, C.J., concurring) (emphasis added), *rev. granted sub nom. Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State*, No. SC2023-1671, 2024 WL 370045 (Fla. argued Sept. 12, 2024). And, in that case at least, Chief Judge Osterhaus concluded that no evidence "support[s] a 2020s-era diminishment clause-based remedy." *Id.*

Third, the Secretary himself has argued—in this case and others—that the Fair Districts Amendments *cannot* justify the use of a race-based districting. For instance, the Secretary has taken the considered position before us that "the Fair Districts Amendments lack a record of race-based problems that justify the need for their race-based solutions." (Doc. 35 at 10–11). Likewise, in the matter pending before the Florida Supreme Court, the Secretary says that the United States Supreme Court has never "assumed, let alone suggested, that a State has a compelling interest in complying with a state version of the VRA" because "[s]uch an assumption would make no sense." Secretary Byrd's Answer Brief at 34–35, *Black Voters Matter Capacity*. "[T]he notion that complying with the FDA is itself a compelling interest boils down to the circular claim that compliance with a state law justifies racial discrimination based on that law." *Id.* at 36.

The Court **GRANTS IN PART AND DENIES IN PART** Secretary Albritton's motion for reconsideration.

DONE and ORDERED this 23rd day of April, 2025.

_____
ANDREW L. BRASHER
UNITED STATES CIRCUIT JUDGE

_____
THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE

_____
Charlene Edwards Honeywell
United States District Judge