IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KÉTO NORD HODGES, et al.,

   *Plaintiffs*,

v.                                            Case No. 8:24-cv-879

BEN ALBRITTON, et al.,

   *Defendants*.

_____/

## THE SECRETARY'S TRIAL BRIEF

As required by this Court, Doc.37 at 11, Defendant Secretary of State Byrd provides this trial brief. It contains proposed findings of fact and conclusions of law.

### Introduction

Plaintiffs present a case they cannot win. They want to invalidate a purportedly race-based district that crosses Tampa Bay, and want to replace it with a race-based district that doesn't cross Tampa Bay. That's improper.

"Plaintiffs' request for relief to remedy an assertedly unconstitutional race-based redistricting plan is itself unconstitutional under the same principle." *Polish Am. Cong. v. City of Chicago*, 226 F. Supp. 2d 930, 934 (N.D. Ill. 2002). The state senate district Plaintiffs want would be (and the district they challenge is) protected by the Florida Constitution's Fair Districts Amendments, specifically its non-diminishment provision. Fla. Const. art. III, § 21(a). But the U.S. Supreme Court has never held that

1

compliance with a race-based *state* constitutional redistricting requirement can serve as a compelling governmental interest in a racial redistricting case. Nor is it likely that the Court ever would. So, if the existing district is unconstitutional, then so too is any remedial district.

And if that wasn't enough, on the narrow tailoring prong for the race-based redistricting test, Plaintiffs still haven't identified a single case that prohibits a district from crossing Tampa Bay. Even if they could, it's clear why Plaintiffs want such a district: it would benefit the Democratic Party and harm the Republican Party. The Florida Legislature can't engage in partisan redistricting, Fla. Const. art. III, § 21(a), and Plaintiffs shouldn't use this case to do so.

For these reasons, including the evidence that will be presented at trial, this Court should reject Plaintiffs' arguments and case. Plaintiffs aren't entitled to a new race-based, partisan district in Tampa.

### Findings of Fact

1. Plaintiffs challenge state senate district 16. Doc.101 at 1.

2. District 16 crosses Tampa Bay.

3. The Florida Senate considers district 16 to be protected under the Fair Districts Amendments' non-diminishment provision.

4. The Fair Districts Amendments are a collection of redistricting standards in the Florida Constitution. Fla. Const. art. III, §§ 20, 21. They apply to congressional, state senate, and state house districts. The Fair Districts Amendments were approved by Florida voters in 2010, through the citizen initiative process.

5. The Florida Senate contends that compliance with the non-diminishment provision was just one of many reasons for district 16's configuration. The Secretary takes no position on this. State senate districts (and state house districts) are drawn by the Florida Legislature, without executive branch input or approval. Fla. Const. art. III, § 16. The Florida Senate is in a better position to explain and argue why district 16 was drawn in the way that it was drawn.

6. Plaintiffs maintain that compliance with the Fair Districts Amendments is a compelling governmental interest—it's "a laudable and constitutional goal," and "[c]omplying with Fair Districts' non-diminishment (or 'non-retrogression') requirement is a compelling governmental interest that could justify race-predominant redistricting." Doc.1 at 4.

7. Even so, Plaintiffs contend that district 16 shouldn't cross Tampa Bay. They contend that crossing it constitutes a racial gerrymander. *See, e.g.*, Doc.1 at 4-5.

8. As a remedy, Plaintiffs want a new "constitutional district[]," meaning one that complies with (in part) the Fair Districts Amendments' non-diminishment provision. Doc.1 at 31. Specifically, as their expert Dr. Barreto will testify, all three of Plaintiffs' illustrative maps comply with the non-diminishment provision.

9. And Plaintiffs want a new district that doesn't cross Tampa Bay. The alternative maps identified in Plaintiffs' complaint—Nicholas Warren's Tampa map, the Caldwell Plan, the Matthew Isbell Plan, and Plaintiffs' demonstrative plan—don't cross the bay. Doc.1 at 14, 23, 26-27. Nor do the three illustrative plans drawn by Plaintiffs' expert Dr. McCartan. In fact, Mr. Warren instructed Dr. McCartan to

"[a]djust District 16 to be wholly contained in Hillsborough County (i.e. not cross Tampa Bay)." PX66.

10. It comes as no surprise why Plaintiffs and Mr. Warren want a new, race-based district that doesn't cross Tampa Bay. In one of their discussions, Mr. Warren and Mr. Isbell (a Democratic mapmaker) noted that this configuration would "become less Republican." Doc.109 at 4. At trial, both Mr. Warren and Mr. Isbell will testify about the partisan motivations, and partisan benefits, of a new senate district that doesn't cross Tampa Bay.

## Conclusions of Law

11. Again, the Secretary takes no position on racial predominance. But if this Court concludes that district 16 was drawn for predominantly race-based reasons—compliance with the Fair Districts Amendments' non-diminishment provision—compliance with the state constitutional provision cannot serve as a compelling governmental interest.

12. The U.S. Supreme Court has only *assumed* that compliance with the Voting Rights Act can serve as a compelling governmental interest in a racial gerrymandering case. *E.g.*, *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 193 (2017) ("[T]he Court assumes, without deciding, that the State's interest in complying with the Voting Rights Act was compelling.").

13. At the very least, the Voting Rights Act was bolstered by a weighty and detailed legislative record, one showing that a race-based problem needed a race-based solution. *E.g.*, *South Carolina v. Katzenbach*, 383 U.S. 301, 314-15, 333-34 (1966).

4

14. The Fair Districts Amendments lack such a record. They were citizens initiatives. Citizens initiatives aren't backed by, and don't come with, legislative records—particularly records demonstrating that race-based problems required a race-based solution.

15. It's unlikely that a state constitutional provision could ever serve as a compelling governmental interest in a federal equal protection case. For an illustrative example, Florida's 1885 Constitution banned interracial marriage. Fla. Const. art. XVI, § 24 (1885). But compliance with that provision wouldn't defeat a federal equal protection clause challenge. *Loving v. Virginia*, 388 U.S. 1, 6 n.5 (1967) (identifying the state constitutional provisions that banned interracial marriage).

16. As such, the remedial district Plaintiffs want—one that would comply with the non-diminishment provision under the Florida Constitution's Fair Districts Amendments—is a constitutional nullity.

17. "[I]f Plaintiffs' request for relief to remedy an assertedly unconstitutional race-based redistricting plan is itself unconstitutional under the same principle, their claim" cannot "stand." *Polish Am. Cong.*, 226 F. Supp. 2d at 934.

18. Plaintiffs cannot prevail on their claim when their remedy is unconstitutional. *See generally Whitmore v. FEC*, 68 F.3d 1212, 1216 (9th Cir. 1996) ("The district court could not, in any event, have granted the injunction sought because it would abridge people's constitutionally protected liberty to contribute to the candidates of their choice."); *Synder v. Murray City Corp.*, 159 F.3d 1227, 1240 (10th Cir. 1998) (Lucero, J., concurring in the judgment) ("The remedy Snyder would have

5

us endorse for himself and others would require the government to invite proselytizers to initiate its meetings—which it cannot do without violating both the second and third steps of" the then-applicable Establishment Clause test.); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1101 (10th Cir. 2006) (en banc) ("[i]ndeed, the Plaintiffs' theory would have the ironic effect of rendering the relief they seek in this litigation unconstitutional under the First Amendment").

19. For that matter, Plaintiffs aren't entitled to a senate district that doesn't cross Tampa Bay. Plaintiffs still haven't identified a single case that makes this district configuration a federal constitutional mandate.

20. There's a reason why Plaintiffs want this configuration: they want to benefit the Democratic Party. But this kind of partisan motivation is barred under state law. Fla. Const. art. III, § 21(a). Indeed, this kind of impermissible partisan influence—particularly from partisan operatives—invalidated districts during the 2012 redistricting cycle. *League of Women Voters of Fla. v. Detzner*, 172 So. 3d 363, 378 (Fla. 2015). Such influence shouldn't be a factor in any remedial district here.

## Conclusion

For these reasons, including the evidence that will be presented at trial, this Court should reject Plaintiffs' equal protection clause claim and enter judgment in favor of the Secretary and Florida Senate.

| | |
|---|---|
| Dated: May 13, 2025 | /s/ Mohammad O. Jazil<br>Mohammad O. Jazil (FBN 72556)<br>Michael Beato (FBN 1017715)<br>HOLTZMAN VOGEL BARAN<br>TORCHINSKY & JOSEFIAK PLLC<br>119 S. Monroe St. Suite 500<br>Tallahassee, FL 32301<br>(850) 270-5938<br>mjazil@holtzmanvogel.com<br>mbeato@holtzmanvogel.com<br>zbennington@holtzmanvogel.com<br><br>Bradley R. McVay (FBN 79034)<br>Ashley Davis (FBN 48032)<br>FLORIDA DEPARTMENT OF STATE<br>R.A. Gray Building<br>500 South Bronough Street<br>Tallahassee, FL 32399<br>(850) 245-6536<br>brad.mcvay@dos.fl.gov<br>ashley.davis@dos.fl.gov<br><br>*Counsel for the Secretary* |

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil